### The Town of Woodstock *v.* Lewis F. Gallup.

*Highways.   Certiorari and mandamus.   Practice.*

Ornament, and the improvement of grounds about a public building, may be taken into consideration and regarded in connection with the convenience and necessity of a proposed highway; but they do not alone constitute a sufficient basis for establishing it.

Upon a report of commissioners in favor of laying a highway, if the county court do not proceed to consider and determine the case upon its merits, the aggrieved party may, upon a proper application, have a remedy in the supreme court.

In an application therefor, a general prayer for such remedy as the court shall deem proper is all that is necessary.

The proper office of, and proceeding upon writs of certiorari and mandamus in the nature of a procedendo considered.

PETITION FOR A CERTIORARI. From the petition and proceedings in the county court, referred to, it appeared that the selectmen of the town of Woodstock laid out a highway through a house lot, and certain buildings of the petitionee, adjacent to the court house and town hall in said Woodstock, from which he ap-

pealed to the county court. The county court appointed commis-
sioners who reported that the public good, and the necessity and
convenience of the public and of individuals required said high-
way and that they accordingly laid and established it; and, at the re-
quest of the appellant, they made an additional report in which they
stated that they established the road upon the ground of a general
public necessity and convenience,which they considered almost indis-
pensible for the use of the court house and the town hall, and for a
proper ingress and egress to and from them and the grounds about
them, taking into account, in part " *the looks*," as well as the con-
venience and necessity, " considering the public have a right to be
accommodated in all these particulars, to a reasonable extent," but
that " for the purpose of *embellishment* alone or mainly" they
should not have established the road. The county court decided,
strictly as matter of law, that they had no power to establish the
highway reported, upon the ground that embellishment or looks in
any part entering into the grounds of laying a road, was illegal;
and therefore set aside the highway laid by the selectmen.

The petition to the supreme court set forth the above facts, either
by direct statement, or by reference to the proceedings of the county
court, and averred that the highway as laid by the selectmen was re-
quired by the public good ; and that the judgment of the county
court was irregular and void, for that the said court had power, as
matter of law, upon the matters stated in the report of the said
commissioners, to establish said highway, and that by said decision
and judgment the said town of Woodstock was injured and
aggrieved ; and prayed that a writ of *certiorari* might issue that the
files and proceedings of said county court might be certified to the
supreme court, to the end that they might be inspected, " and such
further be done in the premises as of right, and according to the
laws of the land, shall seem meet."

*P. T. Washburn* for the petitioners.

The decision of the county court upon the question of law deter-
mined by them was erroneous.

The commissioners fully adjudicated and reported that the pub-
lic good and the necessity and convenience of individuals required
that the highway should be laid. That the result of constructing

it would be an improvement of the looks of the public buildings adjacent, is a mere incident, and should not be allowed to deprive the public of its use. *Proprietors of 3d Turnp.* v, *Champrey,* 2 N. H. 199. *Parks* v. *Boston,* 8 Pick. 227.

The decision of the county court should be reversed, and the case be remanded, for the court to proceed and determine the questions remaining in the case. 1 U. S. Dig. 501.

*Tracy* and *E. Hutchinson* for the petitionees.

Even if the county court erred in the grounds of their decision, a *certiorari* should not, (in the exercise of a sound discretion,) be granted. It is a matter of too small importance. *Paine* v. *Leicester,* 22 Vt. 44. If granted, this court could make no disposition of the case, but to quash the proceedings below, which would do greater injustice than to let them stand. *Royalton* v. *Fox,* 5 Vt. 459, 460. *West River Bridge* v. *Dix et al.,* 16 Vt. 446. 5 Dav. Ab. Title *Certiorari,* Ch. 138, p. 85, Art. 1, § 1 ; p. 86, § 7 ; p. 90, Art 3, § 7, 8 ; p. 92, Art 4, § 1 ; p: 93, Art. 4, § 3. This court must see from the whole record that no injustice is done, and the writ should therefore be denied. *Myers et al.* v. *Pownal,* 16 Vt. 417.

But there was no error in law. Const. of Vt. part 1, Art. 1, 2 and 7. Comp. Stat. Ch. 22, p. 161, § 1, 2, 5, (p. 166) § 32, 33. *Commonwealth* v. *Cambridge,* 7 Mass. 167, (opn. of PARSONS, CH. J.) *Keene* v. *Stetson,* 5 Pick. 492–4–5. *Commonwealth* v. *Sawin et al.,* 2 Pick. 547. *Paine* v. *Leicester,* 22 Vt. 49, (opn. of RED-FIELD, CH. J.) *Beach* v. *Haynes,* 12 Vt. 15.

The opinion of the court was delivered by

REDFIELD, CH. J. This was an original proceeding in this court by way of petition served upon the opposite party, by process in the usual mode, setting forth, in substance, that a petition was pending in the county court, for the purpose of laying out a highway, in the town of Woodstock, through the defendant's land, and that the report of the commissioners, establishing such high-way, having been filed in that court, it was by such court decided, as matter of law, that they had no power to accept the report and establish the highway, on account of defects apparent on the face

of the report, and that they rendered judgment thereon against the establishment of the highway, and dismissed the petition on that sole ground, and as a pure question of law. The petition alleged that there was no such legal defect in the report, and that the petitioners are entitled to have the highway established, and praying this court to grant a writ of *certiorari*, requiring the county court to send the record of that case into this court, and to reverse their judgment, and require the county court to proceed and try the case upon its merits. The defendant objects to the form of the process prayed for; and also that the judgment of the county court was the proper legal judgment in the case.

In regard to the merits of the case, it seems to us to be governed by that of *Rand* v. *Townsend*, 26 Vt. 670, if the ground upon which the county court proceeded is not sound in law. And it seems to us that it is not. If it appeared, upon the face of the report, that the prevailing ground with the commissioners, in establishing the highway, was that of ornament and improvement of the court-house grounds, we should regard it as an insufficient basis upon which to lay the highway, and as equivalent to a report against its being laid. And in that case we do not think it would be competent for the county court to receive evidence, and establish the highway over the heads of the commissioners. I have never known it attempted, in any court in the state, to establish the laying out of a highway by independent proof of its fitness or necessity, when the commissioners, to whom the subject is required to be referred, report against laying it.

But in the present case, we understand the prevailing motive and ground of action with the commissioners, in laying the road, was the public convenience and private necessity, and the matter of ornament merely incidental and accessary. In that view, and we think it the only fair and just view, when the whole report is taken into the account, it does not seem to us objectionable. The question of establishing the highway, being *prima facie* made out by the report, was open to be contested before the court, upon its merits, and should have been determined by them. And, as we held in *Rand* v. *Townshend*, the party is, in some form, upon proper application, entitled to have a remedy in this court.

In regard to the form of the remedy, and especially the particu-

lar remedy prayed for in the petition, it is, perhaps, not very important by what particular name we call it. The general prayer for such remedy as the court shall deem meet and proper is all that is required, and after naming one remedy, as in the present petition, *certiorari*, the addition of the general prayer for such relief as the party may be entitled to, is all that is requisite. And that amendment being matter of form merely, may now be made, and the court will award the proper writ.

But since the subject is now properly before the court, as to the proper office of these different writs, it is not improper to examine it somewhat at length, as the subject has not often been much considered by the court. The statute, chap. 28, § 5, gives this court power to issue writs of " error, certiorari, mandamus, prohibition and quo warranto, and all other writs and processes to courts of inferior jurisdiction, to corporations and individuals, that shall be necessary to the furtherance of justice," &c.

The authority thus conferred has been regarded as co-extensive with the authority, in this respect, exercised by the court of King's Bench, in England, so far as applicable to our condition and wants. And it has generally been the purpose of this court to adopt, substantially, the forms used in the King's Bench. But the organization and course of proceeding, in the superior courts, in reference to actions pending in the inferior courts, is essentially different in England from what it is in this state. As this court is now constituted, we have no general original jurisdiction, either civil or criminal, and no jury trials. And it has never been the practice to bring cases from the inferior courts into this court for trial, which is the principal use of the writ of *certiorari*, in England, where it is more generally confined to criminal proceedings; 4 Black. Com. 320–321; 5 Petersdorff's Ab. 114, [149]; 1 Bac. Ab. Tit. *Certiorari*; F. N. B. 245. But the cases reported under the title *Certiorari* in 5 Pet. Ab. 149, *et seq.*, shows that the *certiorari* is the substitute for a writ of error, in cases where the proceedings are not according to the course of the common law, and where, by consequence, no writ of error lies; and it extends to such proceedings as laying highways, and other judicial proceedings and matters, in the sessions, and other inferior tribunals. But in our practice, we never, upon writs of error, remand a case which is brought into

this court and judgment reversed, where further proceedings are required, unless an issue of fact, proper to be tried by the jury, arises, but the case, in all other respects, is finished in this court. In analogy to this, we have never, that I am aware of, brought up a sessions matter into this court, until it was finished in the inferior court, by a decision upon its merits; *Rand* v. *Townshend, supra.; Paine* v. *Leicester,* 22 Vt. 44.

It seems to us that the more appropriate remedy in cases like the present, where the inferior court disposes of the matters upon some incidental question, and decline to hear the case upon its merits, is a writ of *mandamus,* in the nature of a *procedendo,* as was held by the supreme court of the United States, in *Livingston* v. *Dorgenois,* 7 Cranch 577, 2 Curtis 677; and as was virtually done, in *ex parte,* Crane, 5 Pet. 190, where a mandamus was issued to the judge of the circuit court, in the district of New York, requiring him to sign a bill of exceptions. The writ of mandamus is the supplementary remedy, so to speak, where the party has a clear right, and no other appropriate redress, to prevent a failure of justice; 3 Black. Com. 110; 12 Pet. Ab. 438, (309.) It is the absence of a specific legal remedy, which gives the court jurisdiction; 2 Sel. N. P., Title, Mandamus. But the party must have a specific legal right; *Rex* v. *Barker,* 3 Burrow 1263; ELLENBOROUGH, CH. J., 8 East 219. The remedy extends to the control of all inferior tribunals, corporations, public officers, and even private persons, in some cases; but more generally the English court of King's Bench declines to interfere, by mandamus, to require a specific performance of a contract, where no public right is concerned; Lord MANSFIELD, in *King* v. *Barker,* 3 Burrow 1261–1270; Angell & Ames on Corp. 761; *The King* v. *The Mayor of Colchester,* 2 Term 260; *The King* v. *Corporation of Bedford Lead,* 6 East 356. There is almost no end to the cases upon this subject. They will be found digested, under the title Mandamus, in Petersdorff's Ab. and Bacon's Ab. ﹚

The *procedendo* seems to be only a particular form of the mandamus, and often to accompany the *certiorari,* and indeed always, perhaps, where the case is remanded for further proceedings in the inferior court. So that in the present case, if the *certiorari* had issued, and the record been actually brought into this court, all we

could have done, would be, to reverse the judgment of the county court, and either hear it in this court, upon the merits, or remit it to the county court, with a writ of mandamus, in the nature of a *procedendo*, to hear the case and determine it upon its merits; 14 Petersd. Ab. 43, (32); 3 Black. Com. 109.

The *procedendo* is always accorded where the case is more proper to be tried in the inferior court; *Pope* v. *Vaux & Wife*, 2 Black. 1060. But the mandamus and *procedendo* is not to require the inferior court to render any particular judgment, but to proceed and give judgment, notwithstanding some alleged excuse. *Ex parte Hoyt*, 13 Pet. 279. Nor will a mandamus be accorded where the party has an appeal to the same court where the mandamus is asked. *Ex parte Whitney*, 19 Pet. 404. And in this case, we prefer this mode of redress to that of *certiorari*, only because we can, in this mode, accomplish all that is desired, without bringing the case here before it is finished in the inferior court.

The case of *Walker* v. *The London and Blackwell Railway*, 3 Q. B. 744, is a case almost precisely in point. The sheriff was required to hold inquisition upon petitions for land damages against railways. Upon the trial of the plaintiff's case, the sheriff directed the jury to find a verdict for the defendants, on the ground that the plaintiff was not entitled to compel the company to purchase his property. The Queen's Bench, on application for a peremptory mandamus, decided that the writ must issue, requiring the sheriff to proceed and assess the damages, disregarding his former judgment and the verdict of the jury. The form of the writ there issued was a mandamus, in the nature of a *procedendo*, as in the present case. But very likely the same thing might only be done by mandamus, in regard to those tribunals to which the superior court had power to issue the writ of *certiorari*. For if that were taken away, by statute, it would be regarded as an evasion to accomplish the same thing, more directly, by a mandamus; *Rex* v. *Justices of Yorkshire*, 1 Adol. & El. 563; see *In re Edmundson*, 24 Eng. R. 169.

The petitioners having amended the prayer of the petition, by adding thereto, " or mandamus, or other appropriate remedy, in the discretion of the court," the order is made.

That a writ of *mandamus, in the nature of a procedendo*, do

39

issue to the county court, in the county of Windsor, requiring them to proceed and hear, try and determine the case there pending between the parties aforesaid, as described in the petition to this court, upon its merits, and render judgment thereon, wholly disregarding their former judgment given in the case and complained of in the petition here pending, and that no costs, in this court, be taxed in favor of either party.