# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT

---

FRED J. SANBORN *v.* ROBERT WEIR ET AL.

May Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinon filed January 8, 1921.

*Mandamus—Grounds for Granting Writ not Raised in Petition not Considered—Registration of Veterinarians—Proof of Fact of Previous Practice—Performance of Official Duty Cannot Be Controlled by Courts—Mandamus Can Control Abuse of Power in Denying Clear Right—Evidence not Presented to State Board Cannot Be Considered—Nonresidence of Applicant Sufficient Ground for Refusing Registration—Court Denying Writ May Decide Questions Affecting Future Action of Board—"Practice" of Veterinary Medicine, Etc.—Under G. L. 6178 Board Cannot Consider Educational Qualifications of Applicant.*

1. The Court will not consider a ground for granting a writ of mandamus that is not raised by the petition.
2. Under G. L. 6178, providing for the registration without examination of one who has practiced veterinary medicine, etc., in the State for two years prior to a certain date, provided he files an affidavit showing those facts, the affidavit is not conclusive evidence of such facts, but the board of veterinary registration

is authorized by necessary implication to look beyond the affidavit to ascertain whether the essential facts exist.

3. The State board of veterinary registration is the sole tribunal to determine questions of fact precedent to the licensing of veterinarians; and the burden is upon the applicant to establish such facts.

4. The performance of an official duty or act involving the exercise of judgment or discretion cannot ordinarily be controlled by the courts with respect to the particular action to be taken.

5. Where an administrative officer or board arbitrarily abuses vested power so as to amount to a virtual refusal to perform the duty enjoined or to act at all in contemplation of law, mandamus may be resorted to to enforce specific legal rights which are certain and clear.

6. In determining whether the refusal of the State board of veterinary registration to register the relator as a licensed veterinarian was an arbitrary abuse of authority, the Court is confined to the evidence of what appeared before the board on which their action was based.

7. The nonresidence of one applying for registration as a licensed veterinarian under G. L. 6178, was full justification for the refusal of the State board to grant his application.

8. The Supreme Court, in denying a writ of mandamus to compel the State board to register the relator as a veterinarian, may properly decide questions raised that may affect any future action of the board.

9. In contemplation of G. L. 6178, "practice" of veterinary medicine, surgery, and dentistry does not mean a few isolated acts, but implies an occupation that is continuing; and a practitioner of veterinary science is one who habitually holds himself out to the public as such.

10. The inquiry which the State board is authorized to make in case of an application under G. L. 6178, does not extend to the educational qualifications of the applicant.

PETITION to the Supreme Court for Washington County for a writ of mandamus to compel the respondents, who are the members of the State Board of Veterinary Registration and Examination, to register the relator as a licensed veterinarian; and heard upon the pleadings and testimony taken. The opinion states the case.

*Dunnett, Shields & Conant* for the relator.

*Frank C. Archibald*, Attorney General, *Herbert G. Barber*, and *C. Menzies Miller* (on the brief) for the respondents.

TAYLOR, J. This is a petition for a writ of mandamus to compel the respondents, who are members of the State board of veterinary registration and examination, to register the relator as a licensed veterinarian. It is alleged in the petition that the relator, described as of Orford in the state of New Hampshire, is a regularly qualified and duly licensed veterinarian within and for the state of New Hampshire; that for more than two years prior to November 19, 1912, he had practiced veterinary surgery, medicine, and dentistry in the State of Vermont; that he began practice thereof on or before March 1, 1904, at Woodstock, in this State, where he continued in practice about two years; that from about May 1, 1907, he practiced veterinary surgery, etc., at Wells River in the town of Newbury for more than two years; that on or about November 15, 1909, he moved to the state of New Hampshire, and since that time has practiced in that state and the State of Vermont continuously; that on or about February 27, 1913, he filed with the secretary of the State board of veterinary registration and examination, hereinafter referred to as the State board, an affidavit stating that he had practiced veterinary surgery, medicine, and dentistry in all of its departments in this State for more than two years prior to November 19, 1912, together with the fee of five dollars, and demanded to be registered as a veterinary surgeon. It is further alleged that the relator has been in the active practice of veterinary surgery, etc., for more than eight years last past, and is well qualified to practice the same and entitled by law and by the comity existing between the states of Vermont and New Hampshire to be registered in this State as a veterinarian; that he has complied with all the requirements to entitle him to be so registered, which the State board wilfully and maliciously neglected and refused. The answer denies the allegations of the petition except such as relate to the application for registration, as to which the respondents deny that in refusing to register the relator they acted in wilful and malicious disregard of the duties of their office, but, on the contrary, allege that, having regard therefor, they refused to register the relator for the reason that he had not complied with

the requirements of the statute, and that the affidavit filed by him was false and fraudulent, as shown by facts which are set out in detail, but need not be recited.

The statute relating to the practice of veterinary science was enacted as No. 213, Acts of 1912, and went into effect November 19, 1912. It is now found in Chapter 265 of the General Laws, which for convenience of reference will be cited. The act created a board of veterinary registration and examination and pre-scribed their powers and duties, which include the examination and registration of persons desiring to practice veterinary science in this State. It is provided that no person shall engage in the practice of veterinary medicine, surgery, and dentistry until he has complied with the provisions of the act, nor until he has ob-tained a license from such board and caused it to be recorded in the office of the Secretary of State. G. L. 6177. Three methods are provided by which the license may be obtained: (1) By ex-amination (G. L. 6179); (2) by prior practice in this State (G. L. 6178); (3) by interstate comity (G. L. 6181).

[1] The relator pursued the second method in making ap-plication. While he makes some claim here that he is entitled to registration by reason of interstate comity, on account of a license in New Hampshire, that question is outside the case made by the petition, for it does not appear that he ever made application to the board on that ground. This he tacitly admits in his brief when he states that the issue resolves itself into a question of fact whether the relator had engaged in the practice of veterinary surgery, etc., in this State for at least two years prior to Novem-ber 19, 1912.

[2] The statute provides that a person who has practiced veterinary medicine, surgery, and dentistry in any of their de-partments in this State for two years prior to November 19, 1912, may become registered as an existing practitioner, and shall, up-on payment of a fee of five dollars, receive from the board a license of registration, provided that such person, on or before March 1, 1913, files with the secretary of the board an affidavit showing that he has been so engaged. G. L. 6178. The relator recognizes, and properly so, that the affidavit required in such a case is not conclusive evidence of the facts entitling him to be registered as an existing practitioner. Manifestly it was not in-tended to require the board to issue a license on the unsupported testimony of the applicant. By necessary implication the board

is authorized to look beyond the affidavit to ascertin whether the essential facts exist entitling him to registration without examination. *Townshend* v. *Gray,* 62 Vt. 373, 19 Atl. 635, 8 L. R. A. 112; *Sherburne* v. *Board of Dental Exam.,* 13 Idaho 105, 88 Pac. 762. The evident purpose was to exempt those having at least two years prior experience as practitioners; such experience being regarded as sufficient proof of qualifications. It fairly appears that the board rejected the relator's application because they failed to find that he was entitled to registration without examination. We are asked to review the evidence and reverse their finding.

[3, 4] It is well to note at the outset that under the statute the State board is the sole tribunal to determine questions of fact to be solved precedent to the licensing of a person to practice veterinary science, and that the burden is upon the applicant to establish such facts. See *State* v. *Chittenden,* 112 Wis. 569, 88 N. W. 587. The respondents raise the point that the action of the board is not subject to review in this proceeding, as their action involved an investigation of the facts on which the application was based, and so the exercise of judgment and discretion. The proposition is so well recognized as to be quite elementary that the performance of an official duty or act involving the exercise of judgment or discretion cannot ordinarily be controlled by the courts with respect to the particular action which should be taken in the matter. Among the cases in this jurisdiction where the rule has been applied are *State* v. *Plumley,* 83 Vt. 491, 76 Atl. 146; *Bankers' Life Ins. Co.* v. *Howland,* 73 Vt. 1, 48 Atl. 435, 57 L. R. A. 374; *State* v. *Harrington,* 68 Vt. 622, 35 Atl. 515, 34 L. R. A. 100; *Richards* v. *Wheeler,* 2 Aik. 369. See also *Clement* v. *Graham,* 78 Vt. 290, 319, 63 Atl. 146, where it was held that the writ would lie to compel the performance of purely ministerial duties, which is the converse of the rule. Many of the leading cases will be found collected in 18 R. C. L. 124. The fact that the State board in acting on the relator's application was required to determine questions of fact involving the examination of evidence and passing upon its probative force and effect made its duty in this behalf judicial in character. To compel the board by a mandamus to decide the facts essential to the relator's right in a particular way would be to substitute the judgment of the Court for that of the board, which the law does not permit.

[5]   However, there is a well-recognized exception to this general rule.   The rule presupposes that the officer or board has acted in good faith and with legal discretion.   If there is an arbitrary abuse of the power vested by law in an administrative officer or board, amounting to a virtual refusal to perform the duty enjoined, or to act at all in contemplation of law, mandamus may be resorted to in the absence of other adequate legal remedy. *People* v. *Healey,* 230 Ill. 280, 82 N. E. 599, 15 L. R. A. (N. S.) 603; 18 R. C. L. 126.   But only specific legal rights are enforceable by mandamus, and the right sought to be enforced must be certain and clear.   The writ will not issue when the right is doubtful.   *Bankers' Life Ins. Co.* v. *Howland, supra,* and cases there cited; *Town of Woodstock* v. *Gallup,* 28 Vt. 587; 18 R. C. L. 128; *Bianchi* v. *Martin,* 94 Vt. 160, 109 Atl. 37.

[6]   In view of the claims relied upon by the relator, it will be necessary to examine the evidence, but only to determine whether a clear right exists and an arbitrary abuse of authority is shown.   Our inquiry will necessarily be confined to the evidence of what appeared before the board on which their action was based.   Practically all of the relator's evidence here pertains to matters not brought to their attention and so is immaterial, for the conduct of the board cannot be judged by evidence of matters that the relator failed to lay before them.   March 8, 1913, the relator mailed to Dr. Stevens, of White River Junction, the secretary of the board, an affidavit certifying that he had ''been practicing veterinary surgery in the State of Vermont for the past three years''.   On receipt thereof Dr. Stevens forwarded to the relator a blank form of application such as had been adopted by the board for use in such cases, which the relator filled out and returned March 13, 1913.   The blank included an application for license to practice veterinary medicine, etc., in this State, an affidavit of the applicant's qualifications, and certain certificates of good moral character.   The application was supported by the relator's personal affidavit, but he did not offer any additional proof of the essential facts, then nor at any time thereafter.   At the direction of the board Dr. Stevens made an investigation for the purpose of ascertaining the relator's educational qualifications and whether he had been engaged in practice as a veterinarian for the two years preceding November 19, 1912.   He inquired of people in the vicinity who knew the relator as to what they knew of his practice and learned of ''scat-

tered cases'' where the relator had ''fixed horses' teeth or something like that''; that he had been ''occasionally looking at a lame horse or looking at horses' teeth'', but could not find out ''that he had been in the actual practice of veterinary medicine in any form''. Upon information thus obtained Dr. Stevens reached the conclusion that the relator was incompetent and not qualified to practice for want of education in the science of veterinary medicine, surgery, and dentistry. At a meeting of the board held in June, 1913, the relator's application was denied, and he was so notified, and the fee deposited was returned. It does not appear that the relator ever requested any further hearing on the application before bringing this petition. It appears from the testimony of Dr. Stevens, the only member of the board who testified, that, among other things, the fact that the relator's application was made after March 1, 1913, and that he resided out of the State, were taken into account in reaching their decision.

[7]   That the fact of the relator's non-residence may properly have been a matter for consideration is seen when we examine the reciprocal provisions of the act.   G. L. 6181 provides: .''This State may reciprocate with other states and provinces in an interstate requisition and exchange of licenses upon the basis of equality of educational standard and requisite, which standard shall not be lower than that required by the provisions of this chapter.''   Authority to make reciprocal arrangements with other states admitting residents thereof to practice in this State is necessarily vested in the State board; and the power thus conferred is not mandatory, but is left to their discretion. The ''requisition'' contemplated in this section is the act of requiring or demanding the privilege of practicing in the foreign state as a matter of right.   See Webster's New Inter. Dic.   In the absence of a reciprocal arrangement with the state of his residence affecting the result, the relator could not demand the privilege of a license to practice in this State.   There is nothing in the record to show that any arrangement existed between this State and the state of New Hampshire such as is required to give the relator the right demanded, viz., the right of a resident of this State to demand the same privilege in New Hampshire upon the basis of equality.   So, for anything apparent of record, the fact of the relator's nonresidence may have been full justification for the refusal of the State board to grant his application.   Besides, the

application was late in point of time to bring the relator within the mandatory provision of G. L. 6178, if he would otherwise be entitled to its privileges. The facts bearing upon the question for decision do not show the clear right on the part of the relator nor the arbitrary abuse of authority on the part of the State board that would warrant the Court in granting the prayer of the petition.

[8-10]    However, it is proper in this proceeding to decide questions raised that may affect any future action of the board. 18 R. C. L. 126.    See also *Hart* v. *Folsom,* 70 N. H. 213, 47 Atl. 603.    A practitioner of veterinary science in contemplation of G. L. 6178, is one who habitually held himself out to the public as such.    *Hart* v. *Folsom, supra; State* v. *Bryan,* 98 N. C. 644, 4 S. E. 522; G. L. 6182.    The extent of the applicant's practice is not the controlling question.    Nevertheless, "practice", like "doing business," does not denote a few isolated acts, but implies an occupation that is continuing.    *Johnson* v. *Cass et al.,* 91 Vt. 103, 99 Atl. 633; *Parkhurst* v. *Brock,* 72 Vt. 355, 47 Atl. 1068.    It would be the duty of the board on proper application to give the relator a full hearing and opportunity to produce competent evidence of his having "practiced veterinary medicine, surgery, and dentistry in any of their departments in this State for two years prior to November 19, 1912", if entitled to apply for a license under the reciprocal provision of the statute.    Unless warranted by the existing arrangement for interstate requisition, the inquiry which the board is authorized to make in case of an application under G. L. 6178, does not extend to educational qualifications.

*Petition dismissed with costs.*