2013 VT 94

## Daniel C. Inman v. Andrew Pallito

[87 A.3d 449]

No. 12-382

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed October 11, 2013

Motion for Reargument Denied November 5, 2013

*Matthew F. Valerio*, Defender General, and *Kelly Green*, Appellate Defender, Montpelier, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *David McLean*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff Daniel Inman appeals the superior court judgment granting the State of Vermont's motion to dismiss for lack of subject matter jurisdiction and denying judicial review of the Department of Corrections (DOC)'s decision to terminate his participation in the Incarcerative Domestic Abuse Treatment Program (InDAP). We affirm.

¶ 2. The following basic facts are undisputed. Plaintiff is an inmate serving a twenty-six-month to eight-year sentence for aggravated assault and escape in the Northern State Correctional Facility, which is administered by the DOC.

¶ 3. The DOC's InDAP program allows inmates convicted of crimes of domestic violence to participate in educational and reform based courses. Vt. Dep't of Corr., Vt. Domestic Abuse Teams and Programs (2007), http://doc.vermont.gov/programs/d-viol/. Inmates can obtain an early, supervised release if they have served their minimum sentence, completed a minimum of 104 group InDAP meetings,[1] and met with DOC approval. See 28 V.S.A. § 723 (stating that conditional release is allowed after minimum sentence has been served); Vt. Dep't of Corr., Vt. Domestic Abuse Teams and Programs, *supra* (detailing group meeting and DOC assessment requirements that must be met prior to early release).

¶ 4. Plaintiff began participating in the InDAP program in December 2010, and continued to participate even after he had finished the minimum one-year program requirement. As plaintiff had completed more than one year of the InDAP program, he

---

[1] An inmate must complete a minimum of 104 group meetings, which are offered to prisoners twice a week. In addition, inmates must earn eight to sixteen Program Participation Credits, which can be earned on a monthly basis if minimum standards of participation are met. Vt. Dep't of Corr., Vt. Domestic Abuse Teams and Programs, *supra*. In practice this means that completing InDAP requirements for an early release will take a minimum of one year.

anticipated a potential conditional release once he met his minimum sentence date in April 2012.

¶ 5. As his anticipated release date approached, plaintiff sought a telephone hearing in the superior court to seek visitation with his children upon his release. In accordance with plaintiff's request, the Windsor Superior Court, Family Division held such a hearing on December 22, 2011. The facts are disputed from this point forward; the following summary is derived from plaintiff's filings. According to plaintiff, he was polite and well-behaved throughout the hearing, despite multiple interruptions from his wife, who was the complainant in his domestic assault case. The superior court transcript shows that plaintiff requested multiple times that his wife stop talking so that plaintiff could speak, and also accused her of lying. Upon conclusion of the hearing, plaintiff's caseworker informed his InDAP coordinator that plaintiff had asked his wife several times to "be quiet so I can tell my side of the story" and accused her of lying. Plaintiff vehemently contests this characterization of his behavior during the telephone hearing, claiming that the transcript "altogether refutes" the caseworker's representation.

¶ 6. Based on the caseworker's report, and plaintiff's response to that report, the InDAP staff placed plaintiff on probation from the InDAP program on January 17, 2012. The probation, which was for 90 days, included specific requirements for plaintiff to return to good standing and suspended his phone privileges. Six days later, on January 23, 2012, plaintiff was terminated from the InDAP program. The termination notice indicated the following grounds for the action: plaintiff "continuously justifies abuse towards his partner and blames others for his actions," he "is just going through the motions to get through the program," and he had "another person call his victim of record after being placed on probation for abuse towards her during the court call."

¶ 7. Plaintiff apparently attempted to appeal, unsuccessfully, the termination within the DOC. Letters from DOC staff about that appeal suggest that a ground for the termination was a January 7, 2012 phone call plaintiff made to his wife that DOC alleges violated InDAP rules. Plaintiff argued that because the probation letter suspended his phone privileges only as of January 17, 2012,

the call could not have been a ground for termination. The letters state that the call violated InDAP rules without stating why.[2]

¶ 8. Plaintiff subsequently appealed the termination of his participation in InDAP to the superior court, claiming that the decision was appealable under Vermont Rule of Civil Procedure 75 and that his termination was grounded in false accusations. The State filed a motion to dismiss, alleging that the court lacked subject matter jurisdiction over this case under *Rheaume v. Pallito*, 2011 VT 72, 190 Vt. 245, 30 A.3d 1263. The superior court granted the State's motion to dismiss, citing *Rheaume*. Plaintiff now appeals this decision, asserting that *Rheaume* should not apply to termination decisions that prevent potential early releases, and that subject matter jurisdiction has been established under Rule 75 via either certiorari or mandamus. Plaintiff further argues that even if *Rheaume* is extended to the termination of his participation in the InDAP program, the termination decision should still be reviewable via writ of mandamus as an "extreme abuse of discretion."

¶ 9. We review a dismissal for lack of subject matter jurisdiction under V.R.C.P. 12(b)(1) de novo, "with all uncontroverted factual allegations of the complaint accepted as true and construed in the light most favorable to the nonmoving party." *Jordan v. State*, 166 Vt. 509, 511, 702 A.2d 58, 60 (1997).

¶ 10. ▮ The State bases its motion on the general rule that "there is no absolute right to appellate review of administrative decisions." *Mason v. Thetford Sch. Bd.*, 142 Vt. 495, 498, 457 A.2d 647, 649 (1983). This Court has consistently applied this rule to decisions by prison officials that administer prison programming falling under the discretion of the DOC and found these decisions not reviewable. See *Nash v. Coxon*, 155 Vt. 336, 338-40, 583 A.2d 96, 97-98 (1990) (holding that decisions regarding educational course offerings are discretionary administrative decisions); see

---

[2] The DOC letters are not appealed decisions. It appears from these letters that plaintiff complained that he appealed earlier and never received a decision. DOC's first letter indicated that there was no record of plaintiff's appeal. The second letter, dated two weeks after the first, states that plaintiff's termination was "reviewed and approved by DOC central office program services." It is, of course, not the purpose of this decision to resolve factual disputes between the parties, but we note that the probation decision not only states that plaintiff's phone privileges are suspended but also that they had been suspended until further notice after a meeting with the treatment team on January 5.

also *Rheaume*, 2011 VT 72, ¶¶ 9-10 (stating that programming requirements for release of inmates are administrative decisions within DOC discretion).

¶ 11. ▪ Although persons adversely affected by administrative action have no absolute right to review, we have often provided review under Rule 75(a). Rule 75(a) allows judicial review of governmental administrative decisions, but only "if such review is otherwise available by law." Rule 75(a) " 'does not purport to say what determinations are reviewable, but provides a procedure applicable whenever county court review is provided by the particular statute establishing an agency or is available as a matter of general law by proceedings in the nature of certiorari, mandamus, or prohibition.' " *Rheaume*, 2011 VT 72, ¶ 5 (quoting Reporter's Notes, V.R.C.P. 75). As no statute expressly provides for review of DOC programming decisions, we turn to whether the decision may be reached via certiorari or mandamus, as plaintiff contends.

¶ 12. ▪ The precedent of *Rheaume* looms over the discussion of both of these possible avenues for review. In *Rheaume*, the plaintiff challenged a DOC decision to classify him as a high-risk sex offender, as well as the programming requirements that accompany this classification. There is a statutory right to challenge the classification, but no such right to challenge the programming decisions. *Id.* ¶ 11. After analyzing the discretion of the DOC with respect to programming, we held that review of the plaintiff's programming requirements, even when they control the plaintiff's release date, could not be reached via mandamus because there were no pre-existing duties to enforce. *Id.* ¶ 7. We also held that the decision could not be reached via certiorari, because the DOC is not a lower court or inferior tribunal. *Id.* ¶ 10. In responding to the plaintiff's argument that the DOC's classification decision was a quasi-judicial act, we held that "the promulgation of programming requirements falls within the broad discretion of the DOC to determine what mode of treatment best serves individual inmates." *Id.* ¶ 11. For these reasons, we concluded that the plaintiff's program requirements were not suitable for judicial review. *Id.*

¶ 13. ▪ Plaintiff argues that *Rheaume* is distinguishable with respect to mandamus because his case involves termination of InDAP participation, rather than a programming decision. We find

a distinction but no relevant difference. The Commissioner has the power to review each inmate's program of treatment and to "effect necessary and desirable changes" in such programming. 28 V.S.A. § 102(c)(1), (c)(8). The use of the term "termination" here is merely a label. Plaintiff is contesting a programming decision for which judicial review is unavailable under *Rheaume*.

¶ 14. ■ In addition to plaintiff's contention that mandamus should apply to termination decisions, plaintiff asserts that the DOC's termination decision constitutes an extreme abuse of discretion. We have held that mandamus can, even if not granted by general law, be extended to "extreme abuses of discretion involving refusals to act or perform duties imposed by law." *Vt. State Emps. Ass'n v. Vt. Criminal Justice Training Council*, 167 Vt. 191, 195, 704 A.2d 769, 771 (1997). Unlike *Rheaume*, plaintiff asserts that the DOC's termination decision here was an extreme abuse of discretion because his caseworker mischaracterized plaintiff's behavior during the telephone hearing, and because plaintiff allegedly retained his phone privileges at the time that he contacted the victim on January 7, 2012.

¶ 15. ■ We recognize that mandamus review for extreme, arbitrary abuse of administrative discretion has been considered in a variety of circumstances, from veterinary board decisions to discretionary trial court decisions. See *Sanborn v. Weir*, 95 Vt. 1, 112 A. 228 (1921) (discussing mandamus and board of veterinary registration decisions); see also *State v. Forte*, 159 Vt. 550, 624 A.2d 352 (1993) (discussing mandamus and trial court discretionary judgments). These cases have all required that the alleged arbitrary abuse of discretion amount to a practical refusal to perform a "certain and clear" legal duty. See, e.g., *Sanborn*, 95 Vt. at 5-6, 112 A. at 230. Admittedly, the distinction between the failure to fulfill a legal duty and an extreme abuse of discretion amounting to a failure to fulfill a legal duty is opaque, as a writ of mandamus will typically be granted only when there has been a clear failure to fulfill a legal duty. See, e.g., *Town of Glover v. Anderson*, 120 Vt. 153, 159, 134 A.2d 612, 616 (1957) (holding writ of mandamus appropriate where auditor had legal duty to reimburse town for care of mentally disabled man).

¶ 16. ■ Even assuming, however, that there is a difference between the two standards, plaintiff misses the mark here. Plaintiff is trying to distinguish between a decision that is wrong

(and thus not subject to mandamus review) and one that is very wrong (thus subject to mandamus review), asserting that the decision here is very wrong because it is allegedly based on factual errors. Again, this is a distinction without a relevant difference. Assuming we could grade error in the manner plaintiff argues, our decisions allowing mandamus in certain circumstances are based not on the degree of error, but instead on whether the official actor is exercising discretion at all. Moreover, in the rare instances where this Court has extended mandamus to extreme abuses of discretion, the legal duties being refused were clear. See, e.g., *Chrysler Corp. v. Makovec*, 157 Vt. 84, 91, 596 A.2d 1284, 1288-89 (1991) (holding that a trial court's failure to close discovery was an extreme abuse of discretion because it violated the court's duties owed to the defendant under the Vermont Rules of Civil Procedure). Here, the programming actions fell squarely within DOC discretion.

¶ 17. ▇ The decisions plaintiff wants reviewed demonstrate exactly why we cannot go down the road plaintiff urges. The probation decision is based primarily on plaintiff's response to the charge that he engaged in inappropriate conduct in the court hearing. The InDAP staff found that he minimized or denied his actions, claiming that he could not remember the content of the hearing because of a disability. The staff concluded that he was going through the motions in the InDAP program, presenting what he knew others wanted to hear rather than his own beliefs. The termination decision echoes these themes, noting that plaintiff justifies his abuse of his wife and blames others. The evaluation of plaintiff's actions by the InDAP staff fundamentally involves the exercise of professional expertise and discretion. It cannot be reviewed through mandamus.

¶ 18. ▇ We now turn to plaintiff's contention that certiorari review applies to his appeal. Plaintiff argues that his situation differs from *Rheaume* because his termination from InDAP was more akin to a quasi-judicial disciplinary action than a programming decision. Certiorari review applies to the review of judicial actions by inferior courts and tribunals. *Rheaume*, 2011 VT 72, ¶ 8. Certiorari review is inappropriate here because the DOC is not "performing the functions of a quasi-judicial body when it establishes programming requirements." *Id.* ¶ 10. Although plaintiff attempts to characterize the termination of his participation in

InDAP as quasi-judicial, this is a programming decision that falls within the broad discretion that the DOC must have in order to decide the proper treatment for each inmate. DOC's decision to terminate an inmate from the InDAP program is not a disciplinary action, but instead a programming decision within its discretion.

*Affirmed.*