STATE OF VERMONT

**SUPERIOR COURT**
Windsor Unit

**CIVIL DIVISION**
Docket # 241-5-15 Wrcv


**RONALD LOCKE,**
Petitioner

v.

**ANDREW A. PALLITO, [Former] Commissioner, DOC**
Respondent


## Findings Of Fact, Conclusions Of Law, And Order

This matter came before the court for final hearing on the merits on March 25, 2016. Petitioner was represented by Attorney Seth E. Lipschutz. Respondent was represented by Attorney Robert C. Menzel, Jr. After the hearing, on March 30, 2016, Mr. Locke himself sent a multi-page document to the court that apparently contains information about himself and a cover letter asking that it put in the judge's file. There is no indication that copies were sent to either Attorney Lipschutz or Attorney Menzel. The undersigned judge has not read the document, and will instruct the court clerk to return it to Mr. Locke.

Petitioner is an inmate in the custody of the Commissioner of the Department of Corrections. In this Rule 75 Review of Governmental Action proceeding, he challenges the action of the Department of Corrections in failing to approve or find out-of-prison housing to which he can be released on furlough.


### Findings of Fact

Mr. Locke is 60 years old, and is from the northeast part of Vermont. He is serving a sentence of 6 ½ years to 35 years for sexual assault on a minor. Apparently his daughter was a victim, but other than that, facts about his crime are unknown.

Beginning in 1976 and continuing for just under 20 years, he was in the National Guard, and as a result, he qualifies for Veterans' services. He testified that he has suffered two brain injuries in his life, one from a snow machine accident and the other when a tire blew up. The evidence included brief references to cognitive delays/dementia/brain injuries, but without clarity or specificity. His risk designation of reoffending is moderate/high, but not high.

FILED

MAY 24 2016

VERMONT SUPERIOR COURT
WINDSOR UNIT

1

Prior to the fall of 2010, he was serving his sentence at a facility in Kentucky. In September that year, he was returned to Vermont for assessment and to determine his eligibility to participate in a sex offender treatment program. His minimum release date was November 30, 2012. In December of 2010, he was cleared for participation in the 2-year VTPSA (sex offender) program, and he began it in that month and participated in a regular and satisfactory manner.

In April of 2012, approximately 6 months prior to his minimum release date, at which point he would be eligible for furlough, release planning started. He completed an application for SSI/SSDI which would provide income. The search for housing to which he could be released began. In November of 2012 he successfully completed the sex offender treatment program. He was not released, as he did not have approved housing to which he could be released.

In December of 2012, he was transferred to the prison in Newport for assistance in release planning. His five siblings all lived in the north, but he did not want to pursue living with them so as not to burden them (they are all now between 58-76 years old), and there are some communities in which he cannot live because his victim lives nearby. Living in a trailer in Brownington was a possibility that was denied after a detailed census of the families living in the neighborhood. Another possible residence was rejected because it was across from a school. In March of 2013, it was determined that release could only be approved if it was to structured housing, meaning some level of supervision and a set schedule.

Since he qualified for Veterans' benefits, his caseworker turned to the Veterans' Administration for help. In the midpart of 2013, applications were made to Veterans' facilities in Massachusetts. While he was accepted to a facility in Bedford, Massachusetts, the ICOTS application was denied because he had no Massachusetts connection.[1]

In November of 2013, he put in a request to look for housing in a different county. He was informed that "he would have to have ties to the county he was going to and that he would have to submit a plan to include: Work, Treatment, Structured Housing." As of December of 2013, he was told that there was "no facility or program that would meet that requirement."

In January of 2014, the VA representative revived the Bedford, Massachusetts possibility as new ICOTS rules that were to go into effect in March would prohibit denial based on lack of local connections. In the same month, Mr. Locke was transferred to the Southern State Correctional Center in Springfield, Vermont. He was approved for the Bedford Domiciliary in Massachusetts through the VA, but in August of 2014 the ICOTS application was again denied, this time because the parole office did not recognize the Bedford Domiciliary as a sex offender treatment program and would not accept

---

[1] The court infers that the facility would accept him but the Massachusetts parole/probation authority declined to accept the responsibility of supervising him, without which he could not go to the Massachusetts facility.

2

supervision. The Bedford facility became available again, but only if he were to be accepted at Crescent House, a local facility, but Crescent House did not accept him because he was not applying from the Bedford facility.

By early 2015, his caseworker, Jamie Dickie, who had already been working hard to try to find an appropriate placement, renewed active efforts. She tried to get him into Teen Challenge, which had previously accepted sex offenders from both Vermont and New Hampshire, but that program was no longer accepting sex offenders. A case staffing was held in April of 2015, at which time the requirement of structured housing was removed, and he was approved for independent living. He would have sufficient resources, as he had social security income of $974 and VA benefits of $400.93 for total monthly income of $1374.93. In addition, he had saved $3,500 and would be eligible for Medicaid and for medical benefits through the VA.

It was still necessary to find suitable housing. He had no ties to any community in Vermont except the Northeast Kingdom where his daughter/victim lived, and to which he therefore could not go.

A rental housing option was located in Hartland, Vermont. This would be beneficial as it is close to the VA facilities in White River Junction, and he is eligible to take advantage of VA services, which could include mental health and substance abuse programs that would benefit him. The Hartland residence was denied because "there were children too close and [that] his scores were high for a man his age." Apparently there was a school bus stop near the property. Motels were denied because of the presence of transients. Efforts to find something through a different Veterans' organization were renewed, but have so far produced nothing.

Mr. Locke has been designated as SFI: seriously functionally impaired. He has some cognitive impairment in that he does not always retain things he has been told. Throughout his incarceration, he has improved in his engagement with daily life. He was initially reserved, but he became more involved in daily living activities. He did well on work crew. He has had a variety of jobs in prison, such as janitor, and has pursued them and done "fine." He occasionally gets frustrated or impatient, which is not surprising given that release planning started for him 4 full years ago, and there appears to be nothing on the horizon.

At argument following testimony, it was represented that the process for approval or disapproval of a residence is that once an option is identified, the local Probation and Parole office is notified and an officer researches the site to determine whether it is appropriate, and recommends approval or disapproval. While the actual decision is made by a person with a greater degree of authority and responsibility, the local officer's recommendation carries weight.

3

## Conclusions of Law

Both parties agree that the decision of the Commissioner of the Department of Corrections to release an inmate on furlough is a discretionary decision, and the court does not have the authority to review that kind of decision and find it right or wrong, or to substitute its own judgment. The court can only return the case to the Commissioner if a petitioner shows the decision was based on extreme abuse of discretion on the part of the Commissioner, such as a refusal to act or perform duties imposed by law, *Inman v. Pallito*, 2013 VT 94, ¶ 14, or when there has been a "clear and arbitrary abuse of authority." *Vt. State Employees' Assoc. v. Vt. Criminal Justice Training Council*, 167 Vt. 191, 195 (1997).

The evidence is that the Department has to date made reasonable and diligent efforts to help Mr. Locke find suitable housing. His caseworker during most of the last four years, Jamie Dickie, has been particularly diligent in pursuing efforts through Veterans' organizations. She also expanded options by seeking a case staffing in which the requirement for structured housing was reviewed and removed. The Department's efforts to find housing continued up to the time of hearing. Based on the facts, the court concludes that Petitioner has not shown an abuse of discretion to date.

Nonetheless, the prospects that housing will be approved by the Commissioner in the future are not at all promising. Petitioner argues that at some point, the time may come when the abuse of discretion standard might be met. There is a legitimate basis for concern that, if Mr. Locke's current situation persists, at some point there may be a basis for a finding of abuse of discretion.

Mr. Locke's lack of ties or connections to any community except the Northeast Kingdom, where he cannot go, has been a limitation in the past on his eligibility for some placements. The evidence shows that the Department is now willing to consider placement options in the White River Junction community because of his eligibility to participate in and benefit from Veterans' services available there. However, the denial of the Hartland option raises the question of whether future pursuit of placements in the White River Junction area will be similarly futile. There are two factors that make this a matter of concern.

First, the reasons given for denial of approval of the Hartland option were that children were too close and his scores were too high for a person of his age. That this rationale was used to deny placement is concerning from a practical standpoint, since such a rationale would seem to apply to almost every conceivable placement in the categories the Department is currently exploring. It is self-evident there are always going to be children somewhere in the vicinity of any community. Moreover, the Department's conclusion that his scores were too high seems, on its face, inconsistent with his approval, not only for release, but also independent living.[2]

---

[2] This is not to suggest that the decision was wrong. Not only is the specific decision unreviewable by this court, but it may have been a responsible decision. There is simply inadequate factual information about

4

Second, the longer that Mr. Locke remains unreleased, the more stale his qualifications for release become. Although he participated successfully in a 2-year sex offender treatment program in preparation for release to the community, he completed the program 3 ½ years ago. At this point, even if a residence is located, it is possible that placement may be denied because he has not recently participated in a pre-release sex offender treatment program. This possibility would seem to grow more and more likely as time goes on.

There is a reasonable risk that unless something changes, Mr. Locke will be in a perpetual state of being told that he qualifies to live in the community but simultaneously told that he does not qualify to live in the community.

The court does not know, nor is it the business of the court to know, what Mr. Locke's actual risk to safety of children in the community is. If it is great, then perhaps the decision that he remains incarcerated under sentence for the protection of children is a reasonable one. In that event, at some point it may be an abuse of discretion to lead him to believe that he has a prospect of release when he realistically does not.

If, on the other hand, it continues to be reasonably safe for him to live in the community if appropriate housing is found, then perhaps it will be incumbent on the Commissioner to be able to show that he or she has examined closely the specific facts that underlie a local probation officer's conclusion that a specific housing option is not "appropriate." In other words, if there were to be a string of denials based only on the generalized conclusions of 'children too close and scores too high,' then it might be an abuse of discretion for denials to be repeatedly made on such generalized grounds without closer examination of the specific facts in relation to the particularized risk that Mr. Locke represents to children.

To repeat, the Petitioner's evidence is not sufficient to show abuse of discretion at this time. Moreover, in engaging in the analysis set forth above the court does not mean to suggest that the Department has not been responsible in its decision-making or that it will not be responsible in the future.

The above analysis is an attempt to address the Petitioner's argument that even if there is no abuse of discretion now, if circumstances continue along the current trajectory, at some point there may be an abuse of discretion. The available facts, which do not take into account what may actually happen in the future, suggest that there is a possibility that that could happen, although it is by no means clear, and it is certainly not something that can be determined at this time.

---

many dimensions of such a decision: how close were children, under what circumstances would children be near, what are his risk factors, what do the scores signify, etc.

## Order

For the foregoing reasons, the Petition for Review of Governmental Action is *dismissed.*

Dated this 19th day of May, 2016.

Mary Miles Teachout
Mary Miles Teachout
Superior Court Judge

FILED

MAY 24 2016

VERMONT SUPERIOR COURT
WINDSOR UNIT

6