2013 VT 94



Inman v. Pallito
(2012-382)

 

2013 VT 94

 

[Filed 11-Oct-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 94 
 
  


 No. 2012-382
 
  


 Daniel C. Inman
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Washington
 Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
 Andrew Pallito
 
 
 April Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Robert
 R. Bent, J.
 
 
  
 
 Matthew F. Valerio, Defender General, and Kelly Green,
Appellate Defender, Montpelier, for

  Plaintiff-Appellant.

 

William H. Sorrell, Attorney General, and David McLean,
Assistant Attorney General, 

  Montpelier, for Defendant-Appellee.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund, Burgess and Robinson, JJ.

 

 

¶ 1.            
DOOLEY, J.   Plaintiff Daniel Inman appeals the
superior court judgment granting the State of Vermont’s motion to dismiss for
lack of subject matter jurisdiction and denying judicial review of the
Department of Corrections (DOC)’s decision to terminate his participation in
the Incarcerative Domestic Abuse Treatment Program (InDAP).  We affirm. 

¶
2.            
The following basic facts are undisputed. Plaintiff is an inmate serving
a twenty-six-month to eight-year sentence for aggravated assault and escape in
the Northern State Correctional Facility, which is administered by the DOC.

¶ 3.            
The DOC’s InDAP program allows inmates
convicted of crimes of domestic violence to participate in educational and
reform based courses.  Vt. Dep’t of Corr., Vt. Domestic
Abuse Teams and Programs (2007), http://doc.vermont.gov/programs/d-viol/.
 Inmates can obtain an early, supervised release if they have served their
minimum sentence, completed a minimum of 104 group InDAP
meetings,[1]
and met with DOC approval.  See 28 V.S.A. § 723 (stating that
conditional release is allowed after minimum sentence has been served); Vt.
Dep’t of Corr., Vt. Domestic Abuse Teams and Programs, supra (detailing
group meeting and DOC assessment requirements that must be met prior to early
release).  

¶ 4.            
Plaintiff began participating in the InDAP
program in December 2010, and continued to participate even after he had
finished the minimum one-year program requirement.  As plaintiff had
completed more than one year of the InDAP program, he
anticipated a potential conditional release once he met his minimum sentence
date in April 2012.  

¶ 5.            
As his anticipated release date approached, plaintiff sought a telephone
hearing in the superior court to seek visitation with his children upon his
release.  In accordance with plaintiff’s request, the Windsor Superior
Court, Family Division held such a hearing on December 22, 2011.  The
facts are disputed from this point forward; the following summary is derived
from plaintiff’s filings.  According to plaintiff, he was polite and
well-behaved throughout the hearing, despite multiple interruptions from his
wife, who was the complainant in his domestic assault case.  The superior
court transcript shows that plaintiff requested multiple times that his wife
stop talking so that plaintiff could speak, and also accused her of
lying.  Upon conclusion of the hearing, plaintiff’s caseworker informed
his InDAP coordinator that plaintiff had asked his
wife several times to “be quiet so I can tell my side of the story” and accused
her of lying.  Plaintiff vehemently contests this characterization of his
behavior during the telephone hearing, claiming that the transcript “altogether
refutes” the caseworker’s representation.  

¶ 6.            
Based on the caseworker’s report, and plaintiff’s response to that
report, the InDAP staff placed plaintiff on probation
from the InDAP program on January 17, 2012.  The probation, which was for 90 days, included specific
requirements for plaintiff to return to good standing and suspended his phone
privileges.  Six days later, on January 23, 2012, plaintiff was
terminated from the InDAP program.  The
termination notice indicated the following grounds for the action: plaintiff
“continuously justifies abuse towards his partner and blames others for his
actions,” he “is just going through the motions to get through the program,”
and he had “another person call his victim of record after being placed on
probation for abuse towards her during the court call.”

¶ 7.            
Plaintiff apparently attempted to appeal, unsuccessfully, the
termination within the DOC.  Letters from DOC staff about that appeal
suggest that a ground for the termination was a January 7, 2012 phone call
plaintiff made to his wife that DOC alleges violated InDAP
rules.  Plaintiff argued that because the probation letter suspended his
phone privileges only as of January 17, 2012, the call could not have been a
ground for termination.  The letters state that the call violated InDAP rules without stating why.[2]  

¶ 8.            
Plaintiff subsequently appealed the termination of his participation in InDAP to the superior court, claiming that the decision was
appealable under Vermont Rule of Civil Procedure 75 and that his termination
was grounded in false accusations.  The State filed a motion to dismiss,
alleging that the court lacked subject matter jurisdiction over this case under
Rheaume v. Pallito,
2011 VT 72, 190 Vt. 245, 30 A.3d 1263.  The superior court granted the
State’s motion to dismiss, citing Rheaume. 
Plaintiff now appeals this decision, asserting that Rheaume
should not apply to termination decisions that prevent potential early
releases, and that subject matter jurisdiction has been established under Rule
75 via either certiorari or mandamus.  Plaintiff further argues that even
if Rheaume is extended to the termination of
his participation in the InDAP program, the
termination decision should still be reviewable via writ of mandamus as an
“extreme abuse of discretion.”  

¶ 9.            
We review a dismissal for lack of subject matter jurisdiction under
V.R.C.P.  12(b)(1) de novo, “with all uncontroverted factual allegations
of the complaint accepted as true and construed in the light most favorable to
the nonmoving party.”  Jordan v. State Agency of
Transp., 166 Vt. 509, 511, 702 A.2d 58, 60 (1997). 

¶ 10.         The
State bases its motion on the general rule that “there is no absolute right to
appellate review of administrative decisions.”  Mason v. Thetford Sch.
Bd., 142 Vt. 495, 498, 457 A.2d 647, 649 (1983).  This Court has
consistently applied this rule to decisions by prison officials that administer
prison programming falling under the discretion of the DOC and found these
decisions not reviewable.  See Nash v. Coxon,
155 Vt. 336, 338-40, 583 A.2d 96, 97-98 (1990) (holding that decisions
regarding educational course offerings are discretionary administrative
decisions); see also Rheaume, 2011 VT 72,
¶¶ 9-10 (stating that programming requirements for release of inmates are
administrative decisions within DOC discretion).  

¶ 11.         Although
persons adversely affected by administrative action have no absolute right to
review, we have often provided review under Rule 75(a).  Rule 75(a) allows
judicial review of governmental administrative decisions, but only “if such
review is otherwise available by law.”  Rule 75(a) “ ‘does not
purport to say what determinations are reviewable, but provides a procedure
applicable whenever county court review is provided by the particular statute
establishing an agency or is available as a matter of general law by
proceedings in the nature of certiorari, mandamus, or prohibition.’ ”  Rheaume, 2011 VT
72, ¶ 5 (quoting Reporter’s Notes, V.R.C.P. 75).  As no statute
expressly provides for review of DOC programming decisions, we turn to whether
the decision may be reached via certiorari or mandamus, as plaintiff contends.

¶ 12.         The
precedent of Rheaume looms over the discussion
of both of these possible avenues for review.  In Rheaume,
the plaintiff challenged a DOC decision to classify him as a high-risk sex
offender, as well as the programming requirements that accompany this
classification.  There is a statutory right to challenge the
classification, but no such right to challenge the programming decisions. 
Id. ¶ 11.  After analyzing the
discretion of the DOC with respect to programming, we held that review of the
plaintiff’s programming requirements, even when they control the plaintiff’s
release date, could not be reached via mandamus because there were no pre-existing
duties to enforce.  Id. ¶ 7. 
We also held that the decision could not be reached via certiorari, because the
DOC is not a lower court or inferior tribunal.  Id. ¶ 10. 
In responding to the plaintiff’s argument that the DOC’s classification
decision was a quasi-judicial act, we held that “the promulgation of
programming requirements falls within the broad discretion of the DOC to
determine what mode of treatment best serves individual inmates.”  Id. ¶ 11.  For these reasons, we
concluded that the plaintiff’s program requirements were not suitable for
judicial review.  Id. 

¶ 13.         Plaintiff
argues that Rheaume is distinguishable with
respect to mandamus because his case involves termination of InDAP participation, rather than a programming decision. 
We find a distinction but no relevant difference.  The Commissioner has
the power to review each inmate’s program of treatment and to “effect necessary
and desirable changes” in such programming.  28 V.S.A. § 102(c)(1), (c)(8).  The use of the term “termination” here
is merely a label.  Plaintiff is contesting a programming decision for
which judicial review is unavailable under Rheaume.

¶ 14.         In addition to plaintiff’s contention that mandamus should apply to
termination decisions, plaintiff asserts that the DOC’s termination decision
constitutes an extreme abuse of discretion.  We have held that  mandamus can, even if not granted by
general law, be extended to “extreme abuses of discretion involving refusals to
act or perform duties imposed by law.”  Vt. State Emps. Ass’n v. Vt. Criminal Justice Training Council, 167 Vt. 191, 195, 704 A.2d 769, 771 (1997).
 Unlike Rheaume, plaintiff asserts that
the DOC’s termination decision here was an extreme abuse of discretion because
his caseworker mischaracterized plaintiff’s behavior during the telephone
hearing, and because plaintiff allegedly retained his phone privileges at the
time that he contacted the victim on January 7, 2012.  

¶ 15.         We
recognize that mandamus review for extreme, arbitrary abuse of administrative
discretion has been considered in a variety of circumstances, from veterinary
board decisions to discretionary trial court decisions.  See Sanborn v.
Weir, 95 Vt. 1, 112 A. 228 (1921) (discussing mandamus and board of
veterinary registration decisions); see also State v. Forte, 159 Vt.
550, 624 A.2d 352 (1993) (discussing mandamus and trial court discretionary
judgments).  These cases have all required that the alleged arbitrary
abuse of discretion amount to a practical refusal to perform a “certain and
clear” legal duty.  See, e.g., Sanborn, 95 Vt. at
5-6, 112 A. at 230.  Admittedly, the distinction between the
failure to fulfill a legal duty and an extreme abuse of discretion amounting to
a failure to fulfill a legal duty is opaque, as a writ of mandamus will
typically be granted only when there has been a clear failure to fulfill a
legal duty.  See, e.g., Town of Glover v. Anderson, 120 Vt. 153,
159, 134 A.2d 612, 616 (1957) (holding writ of mandamus appropriate where
auditor had legal duty to reimburse town for care of mentally disabled man). 

¶ 16.         Even
assuming, however, that there is a difference between the two standards,
plaintiff misses the mark here.  Plaintiff is trying to distinguish
between a decision that is wrong (and thus not subject to mandamus review) and
one that is very wrong (thus subject to mandamus review), asserting that the
decision here is very wrong because it is allegedly based on factual
errors.  Again, this is a distinction without a relevant difference. 
Assuming we could grade error in the manner plaintiff argues,
our decisions allowing mandamus in certain circumstances are based not on the
degree of error, but instead on whether the official actor is exercising
discretion at all.  Moreover, in the rare instances where this Court has
extended mandamus to extreme abuses of discretion, the legal duties being
refused were clear.  See, e.g., Chrysler Corp. v. Makovec,
157 Vt. 84, 91, 596 A.2d 1284, 1288-89 (1991) (holding that a trial court’s
failure to close discovery was an extreme abuse of discretion because it
violated the court’s duties owed to the defendant under the Vermont Rules of
Civil Procedure).  Here, the programming actions fell squarely within DOC
discretion.

¶ 17.         The
decisions plaintiff wants reviewed demonstrate exactly why we cannot go down
the road plaintiff urges.  The probation decision is based primarily on
plaintiff’s response to the charge that he engaged in inappropriate conduct in
the court hearing.  The InDAP staff found that
he minimized or denied his actions, claiming that he could not remember the
content of the hearing because of a disability.  The staff concluded that
he was going through the motions in the InDAP
program, presenting what he knew others wanted to hear rather than his own
beliefs.  The termination decision echoes these themes, noting that
plaintiff justifies his abuse of his wife and blames others.  The
evaluation of plaintiff’s actions by the InDAP staff
fundamentally involves the exercise of professional expertise and
discretion.  It cannot be reviewed through mandamus.

¶ 18.         We
now turn to plaintiff’s contention that certiorari review applies to his
appeal.  Plaintiff argues that his situation differs from Rheaume because his termination from InDAP was more akin to a quasi-judicial disciplinary action
than a programming decision.  Certiorari review applies to the review of
judicial actions by inferior courts and tribunals.  Rheaume, 2011 VT 72,
¶ 8.  Certiorari review is inappropriate here because the DOC
is not “performing the functions of a quasi-judicial body when it establishes
programming requirements.”  Id. ¶ 10. 
Although plaintiff attempts to characterize the termination of his
participation in InDAP as quasi-judicial, this is a
programming decision that falls within the broad discretion that the DOC must
have in order to decide the proper treatment for each inmate.  DOC’s
decision to terminate an inmate from the InDAP
program is not a disciplinary action, but instead a programming decision within
its discretion.

Affirmed. 

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1]
 An inmate must complete a minimum of 104 group meetings, which are
offered to prisoners twice a week.  In addition, inmates must earn eight
to sixteen Program Participation Credits, which can be earned on a monthly
basis if minimum standards of participation are met.  Vt.
Dep’t of Corr., Vt. Domestic Abuse Teams and Programs, supra. 
In practice this means that completing InDAP
requirements for an early release will take a minimum of one year.

 





[2]  The
DOC letters are not appealed decisions.  It appears from these letters
that plaintiff complained that he appealed earlier and never received a
decision.  DOC’s first letter indicated that there was no record of
plaintiff’s appeal.  The second letter, dated two weeks
after the first, states that plaintiff’s termination was “reviewed and approved
by DOC central office program services.”  It is, of course, not the
purpose of this decision to resolve factual disputes between the parties, but
we note that the probation decision not only states that plaintiff’s phone
privileges are suspended but also that they had been suspended until further
notice after a meeting with the treatment team on January 5.