VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT 05091
802-457-2121
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-02749

| Randy Persad v Vermont Department of Corrections et al |
| --- |

## ENTRY REGARDING MOTION

Title:      Motion for Summary Judgment (Motion: 3)
Filer:      Annemarie Manhardt
Filed Date:    February 28, 2022

The motion is GRANTED.

Petitioner Randy Persad seeks Rule 75 review of conduct of a case staffing done by the Department of Corrections following a revocation of his parole. Petitioner is represented by Attorney Annemarie Manhardt, and the State of Vermont Department of Corrections is represented by Lauri A. Fisher.

As set forth below, the court determines that there are no disputes of material fact. Based on the facts and the legal analysis herein, Petitioner's motion is granted and the case is remanded to the Department for a new case staffing.

### Undisputed Facts

While the Department has filed a Statement of Disputed Material Facts in response to Petitioner's Statement of Undisputed Material Facts, review of both Statements and the records cited shows that the material facts necessary for decision on the claim are undisputed. Regarding the Department's allegations in its Statement that material facts are disputed, the resolution of the Department's position as to the disputed paragraphs is as follows.

Response to Department's Statement of Disputed Material Facts:

Paragraph 1: It is undisputed that Mr. Persad had a hearing before the Parole Board and had the opportunity to contest the alleged violations charged against him. The Department claims that he "waived that right thereby ending presentation of evidence or argument as to his violations." The statement is undisputed as to the specific parole violations with which he was charged, to which the phrase "his violations" pertains. It does not pertain to other conduct that was never charged as a violation.

Paragraph 2: It is undisputed that Mr. Persad was case staffed after parole violations were established. The Department states that "case staffing is not available for review under V.R.C.P.

75." This is accurate for many cases, but there are exceptions for some situations in which review is available as a matter of law. Thus, this is a matter for legal analysis related to possible exceptions (see below).

Paragraph 3: There is no dispute between the parties that Mr. Persad was case staffed following revocation of parole after three violations found by the Board.

Paragraphs 4 and 5: The court agrees that whether an RFA Order was or was not renewed in 2022 is not relevant. The fact that the New Jersey domestic assault charge was dismissed is not material to the analysis.

Paragraph 6: It is accurate that Mr. Persad did not dispute the charged violations, and that he disputes the use of the allegations included in the "Rationale" section of the case staffing report. His dispute over the use of that information in case staffing is the legal issue presented by this case and calls for analysis of applicable law.

Paragraph 7 and 8: The statements set forth legal standards rather than material facts pertinent to the case. They are not at issue in this case.

Except as stated above, the Petitioner's Statement sets forth undisputed material facts. Consequently, the undisputed facts are as follows:

Mr. Persad was placed on parole in August of 2018. In February of 2021 he was arrested by Bennington Probation and Parole (BEPP) for violating his parole conditions.

He was charged with violating two of his parole conditions on the basis of three acts:

Violation of condition 1, "You shall not violate any laws or court orders," based on criminal charges for:

- Theft of services on February 1, 2021
- Several charges related to a "road rage" incident on February 23, 2021

Violation of condition 4, "You shall not leave the state without permission from your PO" based on the following conduct:

- An unauthorized trip to New Jersey in December of 2020.

While other incidents of conduct could possibly have been charged as parole violations, they were not. For example, he was charged with domestic assault in New Jersey in December 2020, and a former partner obtained a Relief from Abuse Order against him in February 2021. He was not charged with violating parole based on facts related to either of these incidents.

At a bail hearing on March 12, 2021, he was released subject to several conditions. In Addenda which were filed on March 15, 2021 and March 23, 2021, he was also charged with violating release conditions. Thus, by the time of his hearing, he was charged with violating parole on three grounds.

At the Parole Violation Hearing held on April 8, 2021, he admitted to the three charged violations: violating condition #1 (criminal charges from theft and road rage incidents), violating condition #4 (leaving the state without permission), and violating his interim conditions of release (curfew violation). At the hearing, BEPP attempted to call as a witness the former partner to testify about conduct related to the Relief from Abuse order that she had obtained in February. The parole officer repeatedly urged the Board to hear from her. The Board declined to hear evidence about that since Mr. Persad was not charged with any violation related to such conduct. The Board Chair noted that a new parole violation complaint could be filed charging a violation on those grounds. The Board heard no evidence and made no findings regarding conduct related to the former partner. Similarly, the Board heard no evidence and made no findings regarding the New Jersey domestic assault charge that was dismissed. At the conclusion of the hearing, based on Mr. Persad's admissions to the violations that were charged, the Board revoked parole.

The Department of Corrections then conducted a case staffing on April 21, 2021 to determine the consequences of the revocation. It decided on prison for two years or until his pending charges were resolved, whichever came last.

In its written Report (Exhibit 6, Case Staffing Form), there is a lengthy section entitled "Victim Service Specialist Input." There is nothing in this section related to any victims of the violations of which he was charged. There is a lengthy quotation from an apparent written statement of the former partner who obtained the RFA order. It includes numerous factual allegations, some of which would constitute violations of law if found to be true. The content presumably reflects the same evidence that the Parole Board declined to hear because it was not related to any of the violations charged.

There is another section in the Report with the heading "2 year interrupt: Rationale:" The section lists three significant violations. The "first significant violation" mentioned is the December 2020 dismissed New Jersey domestic assault charge, which was not the subject of any parole violation charge. The criminal charges from the February 2021 "road rage" incident are also included within this "first significant violation."

The "second significant violation" is identified as the filing of a Relief from Abuse petition and Final Order granted in March 2021. This refers to the conduct described above that was uncharged and about which the Parole Board declined to hear evidence.

The "third significant violation" consists of noncompliance with the release conditions placed on him at the bail hearing in March as well as the charged retail theft criminal charge from February 2021.

The "Explanation of Decision" section of the Report states: "Decision: based on risk score & number of violations, 2-year interrupt from date of return (3/23/21) and resolve charges whichever is later. Restaff prior to release."

His risk score is moderate. Per DOC policy, a person with a moderate risk score will be incarcerated for two years on furlough revocation if they have three or more "significant

violations." (Exhibit 7, DOC Directive 430.11 at 7). A person with a moderate risk score will be incarcerated for one year if they have two "significant violations." *Id.*

Following the case staffing, Mr. Persad resolved his criminal charges in May of 2021 and pursued all required administrative appeals.

## Legal Analysis

**Rule 75 Jurisdiction**

The Department argues that case staffing decision making is a discretionary function and thus there is no jurisdiction for Rule 75 review. It relies on 28 V.S.A. §808 and *Chandler v. Pallito,* 2016 VT 104 ¶5: "Ultimately, like conditional reentry decisions, reintegration furlough determinations are at the discretion of the Department." There is no dispute that it is within the Department's discretion to determine whether and when an inmate receives programming, and that such programming determinations are a matter within the discretion of DOC. *Rheaume v. Pallito,* 2011 VT 72, ¶ 11. Most case staffing decisions are not reviewable as they often involve granular decision making about appropriate programming or other consequences for a petitioner who has been found in violation of parole or probation conditions.

Nonetheless, a case staffing issue may be reviewable if there was an arbitrary use of the discretionary power or if there is a colorable claim of a constitutional violation.

*Arbitrary abuse of discretion claim*

Case law has been in place for some time that provides that although Rule 75 review and mandamus relief is not available for discretionary acts, it is available upon a showing that the inferior agency or tribunal's discretionary decision was arbitrary and capricious. *Alger v. Department of Labor and Industry,* 2006 VT 115:

> Mandamus will ordinarily lie only "to compel a public officer to perform an official act which is merely ministerial," and only where "the right sought to be enforced is certain and clear." *Roy v. Farr,* 128 Vt. 30, 34, 258 A.2d 799, 801–02 (1969). This rule is subject to the exception, however, that where there is "an arbitrary abuse of the power vested by law in an administrative officer or board which amounts to a virtual refusal to act or to perform a duty imposed by law, *mandamus* may be resorted to in the absence of other adequate legal remedy." *Id.* at 34, 258 A.2d at 802.

*Id.*

In its most recent opinion in October of 2021 on the availability of Rule 75 review of decisions of the Department of Corrections, the Vermont Supreme Court has set forth the following:

> We begin by addressing whether jurisdiction exists under Rule 75. Rule 75 provides for review of "action or failure or refusal to act by an agency of the state

or a political subdivision thereof, including any department, board, commission, or officer, that is not reviewable or appealable under Rule 74." V.R.C.P. 75(a). Rule 75 does not explain which decisions are reviewable but "provides a procedure applicable whenever county court review ... is available as a matter of general law by proceedings in the nature of certiorari, mandamus, or prohibition." Reporter's Notes, V.R.C.P. 75. Mandamus review is available for allegedly arbitrary abuses of discretion that "amount to a practical refusal to perform a 'certain and clear' legal duty." Inman v. Pallito, 2013 VT 94, ¶ 15, 195 Vt. 218, 87 A.3d 449.

DOC contends that the court lacked jurisdiction to consider plaintiff's claim because programming decisions are not reviewable under Rule 75. See Inman, 2013 VT 94, ¶ 18, 195 Vt. 218, 87 A.3d 449 (holding that "DOC's decision to terminate an inmate from [a] program is not a disciplinary action, but instead a programming decision within its discretion" and therefore not reviewable under Rule 75); Rheaume v. Pallito, 2011 VT 72, ¶¶ 9-11, 190 Vt. 245, 30 A. 3d 1263 (affirming that programming decisions are not reviewable for mandamus under Rule 75).

We disagree. Plaintiff did not seek review of DOC's decision to remove him from programming, but rather DOC's decision not to grant him a statutorily required hearing before doing so. Accordingly, this case is distinguishable from Rheaume and Inman, which involved direct challenges to programming decisions. Here, plaintiff contends that the statute creates a clear legal duty: before being punished, an incarcerated person is entitled to a fact-finding hearing, with the right to notice of the charge, to confront the person bringing the charge, to testify, and to question witnesses. 28 V.S.A. §§ 851-852.

*Rose v. Touchette*, 2021 VT 77 ¶¶ 13-15.

In this case, Mr. Persad is not challenging the specific terms of disposition. Rather, his claim is that the case staffing was carried out in an improper manner because the team relied on factual allegations that were unrelated to the violations he was found to have committed, and he had no opportunity to contest those allegations that were used in penal decision making in his case. He argues that in doing so the team violated its clear legal duty and engaged in an arbitrary abuse of discretion.

*Constitutional violation claim*

The Vermont Supreme Court has determined that the court has jurisdiction to review claims of constitutional violations even in the context of programming decisions. "Although discretionary programming decisions are not reviewable by courts, constitutional claims are. The fact that a colorable constitutional claim implicates a programming decision committed to the DOC's discretion does not insulate the alleged constitutional violation from judicial review." *In re Girouard*, 2014 VT 75 ¶ 12.

Mr. Persad claims that in determining the consequences of revocation, the team relied on factual allegations that he never had a chance to contest in violation of constitutional due process protections established in *Morrissey v Brewer*, 408 US 471, 489 (1972), and *Wilkinson v Austin*, 545 US 209, 225-226 (2005). The claim is squarely one of violation of constitutional obligations and thus the court has jurisdiction to review the claim under Rule 75.

*Conclusion on Jurisdiction*

In this case, there is an overlap in the two bases claimed for Rule 75 review. Mr. Persad claims that reliance in the case staffing on the former partner's ex parte allegations against him and on the dismissed New Jersey charge constitute grounds for Rule 75 review as abuse of discretion, and that there was a violation of constitutional due process rights when allegations that he never had a chance to address were used for penal purposes. The allegations are sufficient on both grounds to confer jurisdiction for Rule 75 review.

**Merits**

It is clear that the case staffing team considered Mr. Persad's conduct as alleged in his former partner's statement to be a "significant violation." It is the only conduct referenced as the "second significant violation." [1] Mr. Persad was not charged with violating parole by such conduct, and he never had the opportunity to contest the allegations, yet the team considered this uncharged, ex parte information sufficiently relevant to categorize it as the second most important "significant violation." If it had not been considered, there would be only two significant violations. The difference between two and three significant violations can make the difference of a full year in prison, as three significant violations can lead to two years, whereas if the "second" one is eliminated, leaving two significant violations, revocation is likely to call for only one year in prison for a person with a moderate risk score.

The description of the "first significant violation" is also problematic, as the description begins with identification of the December 2020 New Jersey criminal charge that was dismissed and never charged as a parole violation. It is paired with the criminal charges stemming from the "road rage" incident such that together they are described as the "first significant violation." They occurred two months apart. The listing of the New Jersey charge as the first one of the two indicates that it may have had importance to the case staffing team. In other words, without it, it is unclear that the road rage incident alone would have constituted a "significant violation" on its own, or if so, would have been listed as the 'first' significant violation.

Thus the facts show that in determining the consequences of the three admitted parole violations and imposing time in prison for violating parole, the team placed significant weight on allegations about two matters that were never charged as parole violations, and about which Mr. Persad never had an opportunity for confrontation or testimony. This is wholly inconsistent with the constitutional requirements of due process set forth in *Morrissey* as applicable in parole violation cases.

---

[1] The first, second, and third significant violations were not in chronological order. They appear to be in order of significance.

This violation of due process is sufficient on its own as a matter of noncompliance with constitutional requirements to warrant relief of mandamus for a new case staffing. It also amounts to an arbitrary exercise of discretion sufficiently serious to warrant mandamus relief as the right sought to be enforced, the constitutional due process right set forth in *Morrissey*, is certain and clear. *Alger*, supra. The Board had a "clear legal duty" (*Rose v. Touchette* at ¶15) not to punish him for conduct that was not charged as a violation and to which he had never had a chance to respond.

The legal standard of excluding uncharged conduct from consideration was brought to the attention of the Department during the parole hearing when, despite urging, the Board declined to hear evidence from the former partner and noted that such evidence could be addressed if and when a separate violation related to that specific conduct was charged. Despite this ruling, the case staffing team relied on such ex parte allegations as the basis for its decision that there were three significant violations that supported a two year period in prison. Failure to uphold the constitutional right clearly described in *Morrissey* amounts to a refusal to perform a duty imposed by law. *Roy v. Farr*, 128 Vt. At 34.

Both grounds support the relief requested by Petitioner, which is mandamus relief to remand the matter to the Department of Corrections for a new case staffing in which neither the New Jersey charge nor the former partner's statement relating to the RFA conduct may be considered.

The Department, in its memorandum in response to the motion, contends that Mr. Persad is seeking to have the Rules of Evidence made applicable in case staffing. Petitioner has not made such an argument and so states in his reply memorandum. Rather than seeking to have the rules of evidence applicable to case staffing hearings, Mr. Persad is seeking mandamus relief of a new case staffing in which the case staffing team does not rely on allegations of fact concerning conduct for which he has not been charged with a violation and to which he has not had the opportunity to respond.

## Order

Petitioner's Motion for Summary Judgment is granted. The court will issue a mandamus remanding the matter to the Department of Corrections for a new case staffing in which the team does not consider the uncharged conduct of the 2020 New Jersey criminal charge nor the allegations related to the RFA Order that was uncharged and that he did not have the opportunity to contest.

Electronically signed pursuant to V.R.E.F. 9(d) on November 3, 2022 at 9:19 AM.

*Mary Miles Teachout*

Mary Miles Teachout
Superior Court Judge

Vermont Superior Court
Filed 11/29/22
Windsor Unit