Filed 11/26/24

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 23-CV-04168

Michael Maniery v Nicholas Deml, Commissioner et al

## DECISION ON THE MERITS

Petitioner Michael Maniery is seeking a Rule 75 review of the Department of Corrections decision to not provide him with a double mattress for his muscle tension dysphonia.[1] The court held a final hearing on this matter on October 28, 2024. Petitioner was represented by Attorney Annemarie Manhardt and the Department was represented by Attorney Pamela Eaton. The court makes the following findings of fact and conclusions of law based upon a preponderance of the evidence.

### Findings of Fact

The facts in this case are generally not in dispute. Petitioner is currently incarcerated at Southern State Correction Facility serving a sentence. Previously, Petitioner was incarcerated at Marble Valley Regional Correctional Facility. In 2020, Petitioner underwent a cervical fusion procedure that resulted in vocal cord paralysis and muscle tension dysphonia. Petitioner's symptoms include a feeling of tightness and lack of mobility, difficulty breathing, and hoarseness.

The sleeping arrangements at the Department's facilities consist of metal framed bunk beds. Each bunk has a metal platform and mattress consisting of egg crate foam encased in plastic that is between one and three inches deep. Inmates also have sheets and blankets with the foam mattress.

On June 16, 2023, Petitioner requested an accommodation under the Americans with Disabilities Act for a double mattress. Ex. 20. This request was denied by the Department staff on June 16, 2023, because Petitioner did not meet medical criteria for a double mattress and Petitioner was being referred to a medical provider to discuss his needs. *Id.* This decision was affirmed by the Assistant Superintendent on June 20, 203 and by the Department's Central Office on June 21, 2023. *Id.* In lieu of appealing this decision, Petitioner filed a grievance. Petitioner's final grievance was denied on July 28, 2023. Ex. 21.

Petitioner was referred for treatment to Maddison D'Amico in November 2023. Ms. D'Amico is a speech language pathologist employed with Rutland Regional Medical Center. Ms. D'Amico has a Bachelor's Degree from Ithaca College and a Master's Degree in Communications Sciences and Disorders

---

[1] Petitioner originally sought review of the Department's decision not to provide him with a double pillow, however that issue is now moot as the Department has since provided Petitioner with a second pillow.

from UVM. Ms. D'Amico treated Petitioner from November 2023 through February 2024 for vocal cord paralysis and muscle tension dysphonia. These treatments included education regarding vocal health and hygiene, heat therapy, stretches, massage, and semi-occluded vocal exercises.

On November 16, 2023, Ms. D'Amico recommended Petitioner receive a double mattress for better back and neck support.[2] Ex. 1. The rationale for this recommendation is that poor body mechanics can increase muscle tension and worsen vocal quality. When an individual is sleeping, it is important to address proper body dynamics because of the length of time the body is horizontal. A double mattress would be better for Petitioner's body mechanics. This is a standard treatment Ms. D'Amico recommends for patients with muscle tension dysphonia. The Department did not provide Petitioner with a double mattress after this recommendation. On November 21, 2023, Ms. D'Amico again recommended Petitioner receive a double mattress. The Department did not provide Petitioner with a double mattress because he "does not meet criteria." Ex. 2. On November 30, 2023, Ms. D'Amico recommended for a third time that Petitioner receive a double mattress. Ex. 4. Ms. D'Amico clarified that the recommendations was to help with reducing Petitioners' muscle tension. *Id.* Ms. D'Amico renewed her recommendation for a double mattress on December 7, 2023, January 19, 2024, January 26, 2024, and February 2, 2024. Exs. 5, 7, 8, 9. Petitioner was denied a double mattress because he did not meet criteria.

Body mechanics is a foundational skill for vocal quality. Surgery may improve vocal quality, but it does not negate the need for a double mattress. Muscle tension is something that can easily come back, even with surgery. This is something that happened with Petitioner. Petitioner had a procedure at Dartmouth Hitchcock Medical Center to attempt to repair his vocal cord paralysis. After surgery, his vocal range improved, but has since deteriorated to pre-surgery levels. Petitioner still suffers from muscle tension. At no point did anyone from the Department reach out to Ms. D'Amico to discuss her treatment recommendations.

Dr. Steven Fisher testified on behalf of the Department. Dr. Fisher's current role within the Department involves Hepatitis-C management with general support to other medical providers. Dr. Fisher provided assistance to site providers at the Department's facilities regarding accommodation requests, such as the request made by Petitioner. Dr. Fisher did not recall who was the site provider for Marble Valley during the timeframe the Petitioner was incarcerated there.

Dr. Fisher was part of the committee that developed the Department's policy regarding the use of double mattresses seven or eight years ago.[3] Dr. Fisher's role was to provide medical input for the policy. Dr. Fisher testified the policy only allows an inmate to have a double mattress under the following situations:

1. An inmate is pregnant in her second or third trimester;
2. An inmate has active skin ulcerations;
3. An inmate has congestive heart failure; or
4. An inmate has acute blood clots in their leg.

---

[2] Ms. D'Amico also recommended a double pillow and straws.

[3] The Department did not provide a copy of this policy, but the Petitioner does not dispute the policy is consistent with Dr. Fisher's testimony.

Although Dr. Fisher provided medical input for the policy, he did not know why the policy included inmates with congestive heart failure. He testified he never saw anything that convinced him a double mattress was necessary for an inmate with congestive heart failure. Dr. Fisher testified the Department drew from national standards, modified for Vermont's particular use, in establishing the policy governing double mattresses. Dr. Fisher testified there are safety concerns with a double mattress, but was not familiar with what those concerns were.

Dr. Fisher is familiar with muscle tension dysphonia as a generalist, but acknowledged he is not a specialist. He testified muscle tension dysphonia is generally treated with medications. Dr. Fisher testified a double mattress would not really help muscle tension dysphonia but did not provide a basis for that opinion.

Dr. Fisher denied the Petitioner's request for a double mattress based solely on a review of the records. He did not physically assess the Petitioner, nor did he make an independent determination regarding whether a double mattress was medically indicated.

<u>Analysis</u>

Petitioner seeks review under Rule 75(a) of the Vermont Rules of Civil Procedure, which provides that any action by a state agency "that is not appealable under Rule 74 may be reviewed in accordance with this rule if such review is otherwise available by law." Here, the parties point to no statute, and the court cannot identify one, that specifically indicates that judicial review of a DOC action concerning the provision of inmate health care is available. "When, as here, legislation is silent on whether review is available, . . . appeal under Rule 75 [is permitted] so long as review would have been available under any one of the extraordinary writs, such as mandamus, scire facias, prohibition, quo warranto, and certiorari." *Vt. State Employees' Ass'n v. Vt. Crim. Just. Training Council*, 167 Vt. 191, 195 (1997)). A writ of certiorari is inappropriate here because DOC is not an inferior court or tribunal and it is not performing the functions of a quasi-judicial body when it makes decisions on health care treatments provided to inmates. *Cf. Inman v. Pallito*, 2013 VT 94, ¶ 18. Mandamus review remains as a possibility, however. Such relief is available to "command . . . an official, agency, or lower tribunal 'to perform a simple and definite ministerial duty imposed by law.'" *Wool v. Menard*, 2018 VT 23, ¶ 11, 207 Vt. 25 (quoting *Vt. State Employees' Ass'n*, 167 Vt. at 195). Thus, while mandamus relief is ordinarily not permitted where the action or decision at issue involves an exercise of discretion, *see, e.g., Inman*, 2013 VT 94, ¶¶ 16-17; *Rheame v. Pallito*, 2011 VT 72, ¶ 11, 190 Vt. 254, this "rule is subject to the exception . . . that where there is 'an arbitrary abuse of the power vested by law in an administrative officer or board which amounts to a virtual refusal to act or to perform a duty imposed by law, *mandamus* may be resorted to in the absence of other adequate legal remedy.'" *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 15 (quoting *Roy v. Farr*, 128 Vt. 30, 34 (1969)); *see Corcoran v. Vill. of Bennington*, 128 Vt. 482, 489 (1970) ("[W]here a duty is imposed upon public officials, but discretion accorded in the manner of its performance, mandamus will lie to require it to be done, but will not dictate the details of its doing.").

In order for a court to issue a writ of mandamus under Rule 75, there are three requirements:

"(1) The petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, but not for the

review of official acts that involve the exercise of the official's judgment or discretion; and (3) there must be no other adequate remedy at law."

*Wool*, 2018 VT 23, ¶ 11 (quoting *In re Fairchild*, 159 Vt. 125, 130 (1992)).

Here, regarding a clear and certain right to the action sought, the Department is required by statute to "provide health care for inmates in accordance with the prevailing medical standards." 28 V.S.A. § 801(a). The "clear and certain right" requirement is met because Petitioner is an inmate entitled to be provided health care by the Department that accords with prevailing medical standards. Although the Department ultimately has discretion to determine what level or nature of health care satisfies "prevailing medical standards," the Department must take *some* rational action in order to make that determination for inmates under the Department custody and care. The Department must also undertake some corresponding health care action or treatment protocol, for its inmates, that accords with such determination.

In addition, by statute the Department is required to "establish and maintain policies for the delivery of health care in accordance with the standards in [28 V.S.A. § 801(a)]." 28 V.S.A. § 801(d). That provision also gives inmates like Petitioner a clear and certain right to agency action. While the Department is accorded discretion to determine which polices satisfy "prevailing medical standards," the Department has a clear obligation to take *some* rational steps to both establish, and then maintain, such health care policies.

Next, Petitioner meets the second mandamus requirement because he seeks enforcement of these above-described ministerial duties and does not challenge the Department's exercise of discretion or judgment. Largely through the testimony provided by Dr. Fisher—the Department's designated representative in this case and the actual decision-maker regarding Petitioner's health care—Petitioner has shown that the Department has failed to carry out non-discretionary duties. For example, although Dr. Fisher was involved in the creation of the Department's policy regarding the use of double mattresses for certain medical conditions, and provided the Department with input as a medical professional, he admits that he is a generalist without any particular knowledge of the prevailing medical standards for treatment of those with muscle tension dysphonia. Relatedly, there was no showing that the Department's eight-year-old policy regarding double-mattress care or treatment was developed or maintained through the exercise of professional medical judgment as to the prevailing medical standards for those with the condition of muscle tension dysphonia. Although Dr. Fisher testified that a double mattress "would not really help" muscle tension dysphonia, he provided no basis for that opinion.[4] Thus, the Department's policy, which precludes all non-listed medical conditions (such as muscle tension dysphonia), is the result of a failure to apply professional judgment or discretion, rather than the exercise of such discretion.

Indeed, the Department's existing double-mattress policy was also revealed to be wholly arbitrary as to the medical conditions to which it expressly applied and covered. Dr. Fisher testified, for example,

_____

[4] Similarly, while Dr. Fisher testified that there were "safety concerns" associated with the use of a double-mattress, he was unable to articulate what any of those concerns were, or why they might apply to any particular inmate, much less to Petitioner.

that there was no basis or reason for treating those with congestive heart failure with a double-mattress protocol. He admitted that he did not even know why the Department's existing policy on double mattresses included inmates with congestive heart failure. Yet, despite this view, and Dr. Fisher's presumable input to the policy committee, the Department included congestive heart failure as a covered condition.[5] It stands to reason that if the Department's own medical expert views one of the policy's covered conditions as lacking in any medical basis, then the policy's exclusion of other conditions (such as muscle tension dysphonia) is likewise arbitrary.

Moreover, Ms. D'Amico, a speech language pathologist who specializes in communication disorders, credibly testified that muscle tension dysphonia adversely affects voice quality and contributes to voice disorder. Poor body mechanics as a result of an inadequate mattress can result in increased muscle tension, which can worsen vocal quality. Yet, Dr. Fisher, a generalist who was unfamiliar with double mattresses as a method of treatment, failed even to speak with Ms. D'Amico, to ascertain whether use of an adequate mattress is the prevailing standard of medical care for muscle tension dysphonia. The Department made no efforts to contact Ms. D'Amico to see why she was recommending a double mattress for the Petitioner.

Thus, the Department, by simply citing an arbitrary policy in a cookie-cutter or rote fashion, without even rationally attempting to meet the prevailing standard of care, "clearly and arbitrarily abused its authority." *King v. Gorczyk,* 2003 VT 34, ¶ 7, 175 Vt. 220. This is a case of agency discretion *withheld,* not of agency discretion "erroneously" or mistakenly applied to the matter at hand.

Lastly, the Department's refusal to develop and maintain, or then apply, a double-mattress policy through the exercise of some discretion or professional judgment, leaves Petitioner without an adequate remedy at law. *See Wool,* 2018 VT 23, ¶ 17. Accordingly, Petitioner has met the third and final requirement for mandamus relief under Rule 75.

---

[5] There is no indication from the record that the committee that developed the policy consisted of any medical professional other than Dr. Fisher, or that the policy's coverage of inmates with congestive heart failure, despite Dr. Fisher's views, was the result of a difference of opinion among those with knowledge of prevailing medical standards. In short, it is not as though other medical professionals overruled or ignored Dr. Fisher's opinions. As such, there is no evidence that the Department's policy on double mattresses represents a judgment or exercise of discretion by those with knowledge of prevailing medical standards.

<u>Order</u>

      The decision of the Department of Corrections to prohibit the Petitioner from the use of a double mattress is reversed and the case is remanded to the Department. The Department shall reconsider Petitioner's request in accordance with prevailing medical standards.


Electronically signed on November 25, 2024 pursuant to V.R.E.F. 9(d)

*Alexander N. Burke*
_____
Alexander N. Burke
Superior Court Judge