Filed 05/01/26

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-00523

| Walter Taylor, III v. Nicholas Deml, Commissioner VT DOC |
| --- |

## ORDER DISMISSING ACTION
## FOR LACK OF SUBJECT MATTER JURISDICTION

This is an action brought pursuant to Rule 75 of the Vermont Rules of Civil Procedure. The Plaintiff, an inmate in the custody of the Vermont Department of Corrections (DOC), seeks review and relief from medical care decisions made by DOC's health care professionals. The Plaintiff, Walter Taylor, III, is represented by Marco Kushner, Esq., of the Prisoners' Rights Office in Montpelier. Defendant Nicholas Deml, the Commissioner of DOC, is represented by Pamela L.P. Eaton, Esq.

This action was brought in February of 2023 and proceeded to a bench trial on the merits held on December 4, 2025. After the close of evidence, the court requested briefing from the parties as to whether there is subject matter jurisdiction. Such briefing was submitted in early February of 2026. For reasons that follow, the Court concludes that subject matter jurisdiction is lacking and that dismissal of this action is required.

### Background and Factual Summary

Mr. Taylor is serving a criminal sentence and was remitted to the custody of DOC. Prior to his incarceration he was diagnosed with attention deficit hyperactivity disorder (ADHD) and binge eating disorder. This case arises from Mr. Taylor's disagreement with decisions by DOC's health care providers as to the proper treatment of his diagnosed conditions.[1] He claims that the medications and behavioral therapies that have been offered to him by DOC are ineffective, and he disputes DOC's decision not to prescribe him a particular stimulant medication, commonly referred to by its brand name, "Adderall." He seeks an order requiring DOC to arrange to have him evaluated by an external medical professional, essentially for a second opinion regarding the proper treatment for his ADHD and binge eating disorder.

By statute, DOC is obligated "to provide health care for inmates in accordance with the prevailing medical standards." 28 V.S.A. § 801(a). At the merits hearing, Mr. Taylor called Dr. Roberto Olivardia, a clinical psychologist specializing in treatment of ADHD and eating disorders as an expert witness. Dr. Olivardia, who holds a Ph.D and a lectureship at Harvard

---

[1] DOC has hired Wellpath, a private services contractor, to provide health care for individuals who are in DOC's custody.

1

Medical School, testified that DOC's failure to prescribe Adderall falls below the prevailing standard of care. DOC's doctors disagree for two main reasons. First, Adderall is contraindicated for someone like Mr. Taylor, who also suffers from diagnosed hypertension. Second, a recent psychiatric assessment of Mr. Taylor found that he no longer meets the diagnostic criteria for ADHD.

Mr. Taylor disputes the adequacy of DOC's recent psychiatric assessment. He argues that the prevailing standards of medical care dictate that he be re-assessed and re-diagnosed by an independent, external medical professional who is unaffiliated with DOC or its health care contractors.

Analysis

I.  Subject Matter Jurisdiction Under Rule 75

When the Vermont Rules of Civil Procedure were adopted in 1971, they abolished the so-called "ancient writs" for extraordinary relief, including the writs of certiorari, mandamus, and prohibition. *See* Reporter's Notes – V.R.C.P. 75; Reporter's Notes – V.R.C.P. 81. That abolishment, however, did not eliminate the ability to seek the same relief that had been available under those writs. The new Rules included Rules 74 and 75. Rule 74 established the procedural rules that govern cases where a party seeking review of a governmental decision or action had been expressly afforded a right to do so *by statute*. Rule 75 was designed to work in tandem, establishing the procedures that apply where a party seeks judicial review of a governmental action that is *not* made appealable or reviewable by statute. Rule 75 provides, in pertinent part:

> Any action or refusal to act by an agency of the state or a political subdivision thereof, including any department, board, commission, or officer, that is not reviewable or appealable under Rule 74 of these rules . . . may be reviewed in accordance with this rule if such review is otherwise available by law.

V.R.C.P. 75(a). While Rule 75 does not specify what particular actions are properly subject to review, our Supreme Court has consistently held that "review is otherwise available by law" for purposes of Rule 75 "so long as review would have been available under any of the so-called extraordinary writs, such as mandamus, scire facias, prohibition, quo warranto, and certiorari." *Vt. State Employees' Ass'n v. Vt. Crim. Just. Training Council*, 167 Vt. 191, 195 (1997); *see Rheaume v. Pallito*, 2011 VT 72, ¶ 5, 190 Vt. 245.

In this case, Rule 74 does not apply, since there is no statutory right to judicial review of DOC's health care decisions. Further, the parties (and the court) agree that mandamus is the only basis on which Mr. Taylor could possibly obtain this court's review of such decisions.[2]

---

[2] Prohibition is to stop a lower court or inferior ministerial body possessing incidental judicial powers from unlawfully abusing or usurping judicial powers. *See Maple Run Unified Sch. Dist. v. Vt. Human Rights Comm'n*, 2023 VT 63, ¶ 21, 218 Vt. 496. Here, DOC is not construing laws, adjudicating legal rights, or performing any other judicial functions, so prohibition does not apply. Similarly, certiorari does not apply because it "is to review judicial action of inferior courts or tribunals in regard to substantial questions of law affecting the merits of the case," and requires a final judgment. *State v. Forte*, 159 Vt. 550, 554 (1993).

"The availability of mandamus review is limited, however." *Off. of Auditor of Accts. v. Off. of Att'y Gen.*, 2025 VT 36, ¶ 45, 342 A.3d 948. It "'will not lie to review the performance of official acts involving the exercise of discretion.'" *Ley v. Dall*, 150 Vt. 383, 386 (1988) (quoting *Bargman v. Brewer*, 142 Vt. 367, 369 (1983)). Mandamus is to "command . . . an official, agency, or lower tribunal 'to perform a simple and definite ministerial duty imposed by law.'" *Wool v. Menard*, 2018 VT 23, ¶ 11, 207 Vt. 25 (quoting *Vt. State Employees' Ass'n*, 167 Vt. at 195); *see Bargman*, 142 Vt. at 369-70 ("mandamus will lie for the enforcement of . . . an act 'regarding which nothing is left to discretion—a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist.'") (quoting *Black's Law Dictionary* 899 (5th ed. 1979)). Thus, the rule applies in matters where a writ is sought to enforce ministerial duties imposed by statute, as opposed to reviewing performance of official acts involving the exercise of judgment or discretion.

Our Supreme Court long ago explained why mandamus jurisdiction is limited:

It is a well recognized rule that the performance of an official duty or act involving the exercise of discretion can not ordinarily be controlled by the courts with respect to the particular action which should be taken in the matter. To compel a board or official by mandamus to decide facts under such circumstances in a particular way would be to substitute the judgment of the court for that of the board or official, which the law does not permit.

*Proctor*, 111 Vt. at 369 (citing *Sanborn v. Weir*, 95 Vt. 1, 5 (1921) ("The proposition is so well recognized as to be quite elementary[.]")); *see also Marbury v. Madison*, 5 U.S. 137, 170-71 (1803) ("It is . . . the nature of the thing to be done that the propriety or impropriety of issuing a mandamus, is to be determined. Where the head of a department acts in a case, in which discretion is to be exercised; in which he is the mere organ of executive will; . . . any application to a court to control, in any respect, his conduct, would be rejected without hesitation.").

In rare circumstances, mandamus may be used to review acts that constitute an extreme or arbitrary abuse of discretion. "[W]here there is 'an arbitrary abuse of the power vested in law in an executive branch administrative officer or agency which amounts to a virtual refusal to act or to perform a duty imposed by law, *mandamus* may be resorted to if there is no adequate remedy available at law.'" *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 15, 181 Vt. 309 (quoting *Roy v. Farr*, 128 Vt. 30, 34 (1969)). Thus, "where a duty is imposed on public officials, but discretion accorded in the manner of its performance, mandamus will lie to require it to be done, but will not dictate the details of its doing." *Corcoran v. Vill. of Bennington*, 128 Vt. 482, 489 (1970).

Two cases illustrate the application of these principles. In *Inman v. Pallito*, 2013 VT 94, 195 Vt. 218, an inmate in DOC custody who had been attending an institutional treatment program intended to reduce his risk of recidivism filed a Rule 75 petition challenging DOC's decision to terminate him from the program. If the inmate successfully completed the program, he would have been eligible for release on furlough after serving his minimum sentence. By statute, DOC had the power to "'effect necessary and desirable changes'" to inmates' institutional treatment programming. 2013 VT 94, ¶ 13 (quoting 28 V.S.A. § 102(c)(1), (c)(8)).

DOC's termination decision was made by prison staff based on their assessments of the inmate's continued behaviors, attitudes, and beliefs, both in and outside the treatment courses. They also found that the inmate's participation in the treatment program during the prior year had been ineffective, since the inmate was merely "going through the motions," and "presenting what he knew others wanted to hear rather than his own beliefs." *Id.* The Supreme Court found mandamus jurisdiction over DOC's termination decision was lacking, since "[t]he evaluations of [the inmate's] actions by the [DOC] staff fundamentally involves the *exercise of professional expertise and discretion*." *Id.* (emphasis added).

The second case, *Yoh v. Baker*, No. 21-CV-01699, 2022 WL 12611679 (Vt. Super. Ct. Aug. 16, 2022) (Hoar, J.), is a useful contrast to *Inman*. In *Yoh*, the applicable statutes, 28 V.S.A. §§ 1(b) & 102(c)(8), were construed to require DOC to furnish at least *some* treatment programming for each inmate who was serving less than a life sentence, to prepare them for potential release back into the community. The plaintiff-inmate was convicted decades earlier of murdering his wife. He had been identified by DOC as posing a high risk of recidivism. At the same time, DOC identified him as someone for which treatment programming was a "priority." After serving his minimum sentence, the inmate began repeatedly requesting such programming. Yet, on several occasions, DOC denied the requests based on the unvarying conclusion that DOC had not yet developed—and therefore could not and would not offer—treatment programming for the inmate's particular psychological conditions and recidivism risks.

The inmate eventually challenged DOC's denials pursuant to Rule 75. DOC sought dismissal for lack of mandamus jurisdiction, arguing that the inmate was, as in *Inman*, challenging a discretionary decision regarding DOC's institutional treatment programming. The superior court disagreed with DOC:

> Unlike the petitioners in *Rheame* and *Inman*, Mr. Yoh does not directly challenge any DOC programming decisions. Rather, he asserts, essentially, that DOC has failed to make a programming decision. DOC's admitted failure to take action is the gravamen of the request for mandamus; Mr. Yoh plainly does not ask the court to second-guess or pass judgment on DOC's decisions or its reasoning.

2022 WL 12611679, at *2. On that reasoning, the superior court denied DOC's motion for dismissal. The court was careful to note, however, that its decision was not on the merits and that DOC would retain its discretion to decide the appropriate treatment program for the inmate.

*Inman* and *Yoh* together illustrate that mandamus review is not available to challenge DOC decisions based on the exercise of professional expertise and discretion and is limited to claims based on DOC's failure or refusal to carry-out a simple, ministerial duty.

II. Application of Jurisdictional Principles

Here, Mr. Taylor observes that 28 V.S.A. § 801(a) requires DOC to afford him health care "in accordance with the prevailing medical standards." He argues that this court is

4

empowered to review DOC's performance of that statutory mandate under Rule 75.[3]  This court disagrees.  This rationale would allow judicial review of medical care and treatment decisions made by DOC's medical professionals. Such decisions are "highly discretionary" and involve the exercise of professional medical expertise and judgment.  *Morgan v. State*, No. 22-CV-01341, 2022 WL 17251725, at *7 (Vt. Super. Ct. Nov. 10, 2022) (Mello, J.). Mr. Taylor asks this court to determine what the prevailing medical standards are for him and his conditions in particular and also decide whether DOC's medical providers' decisions are in accord with such standards. He further asks this Court to review and reject the discretionary decisions by licensed medical providers, who refused to prescribe him Adderall, believing that it is contraindicated and not medically necessary.  Thus, Mr. Taylor is really asking this Court to substitute its own judgment and discretion for that of licensed medical professionals.  Mr. Taylor's claim is thus analogous to the one in *Inman*, where the inmate claimed that DOC's decision to terminate him from a particular program rested on DOC staff members' mistaken or unjustified evaluations of his conduct, attitudes, and responses to treatment programming.

Even assuming that Mr. Taylor's diagnoses are undisputed by all medical experts, DOC has discretion in deciding what the prevailing treatment or care standards are under the circumstances.[4]  Review of such discretionary decisions is not permitted under Rule 75. Further, Mr. Taylor does not argue that DOC has engaged in any actions or inactions that are tantamount to a refusal to act or a refusal to exercise any discretion at all.  Rather, he directly challenges DOC's health care decisions as decisions with which he (through his medical expert)

---

[3] Subject matter jurisdiction is not an issue that is subject to party waiver or consent, and courts are obligated to assure that it exists, *sua sponte* if necessary.  *Smith v. White's Estate*, 108 Vt. 473, 480 (1937).  As noted above, the Court requested post-trial briefing from the parties addressing whether the Court had subject matter jurisdiction. Plaintiff responded by arguing that there is mandamus jurisdiction, observing that a number of Vermont Superior Court judges over the past several years have exercised jurisdiction in Rule 75 cases where inmates challenged DOC's medical care decisions. However, Plaintiff identified no such decision that contained any analysis of subject matter jurisdiction. DOC's post-trial brief offered essentially the same answer and analysis as did Plaintiff. DOC has taken a more limited view of mandamus jurisdiction in other Rule 75 cases, however. *See* Brief of Appellee in *Inman v. Pallito*, Vt. Sup. Ct. Dkt. No. 2012-382 (filed Feb. 12, 2013), at 6-7, 12-14 (available at 2012 WL 1240276); Appellee Dep't of Corrections' Brief in *Ala v. Pallito*, Vt. Sup. Ct. Dkt. No. 2013-434 (filed Mar. 17, 2014), at 5-8 (available at 2014 WL 1096402); Brief of Appellee in *Miller v. Pallito*, Vt. Sup. Ct. Dkt. Nos. 2013-170 & 2013-197 (filed Jan. 7, 2014), at 7-10 (available at 2014 WL 92910); Appellees' Brief in *Johnson v. Pallito*, Vt. Sup. Ct. Dkt. No. 23-AP-294 (filed Nov. 3, 2023), at 6-9 (available at 2023 WL 9954564); Def.'s Mot. to Dismiss in *Yoh v. Baker*, Vt. Super. Ct. Dkt. No. 21-CV-01699 (filed Mar. 28, 2022).

[4] As noted above, Mr. Taylor disputes a recent psychiatric assessment by a DOC's doctor, and he seeks an order compelling DOC to arrange for a new assessment and diagnosis by an outside medical professional.  On that basis, Mr. Taylor now argues that he is not actually requesting an order mandating that he receive Adderall or any another particular type of treatment from DOC, but instead, merely a second assessment to ensure that DOC has given him appropriate care.  He claims that such relief is permissible under Rule 75.  However, DOC's recent decision to assess and reach a new diagnosis for Mr. Taylor by using DOC's own psychiatrist, and without an outside doctor's involvement, is itself a discretionary judgment as to how to provide and administer appropriate health care. Moreover, the Court can ascribe no reasonable purpose or point to a second medical evaluation and diagnosis from an outside doctor, except to second-guess the diagnosis made by DOC's psychiatrist in the first instance.  As such, Mr. Taylor is plainly challenging discretionary medical care decisions and actions taken by DOC's medical professionals.  Further, in his post-trial proposed findings of fact, he continues to ask this Court to agree with his own medical expert's opinions (rather than DOC's), by finding that the prevailing standard of medical treatment for his ADHD and binge eating disorder includes a prescription for Adderall or a similar stimulant.

5

substantively disagrees. *Cf. Yoh*, *supra*. That is not the type of review or relief permitted under Rule 75.

Mr. Taylor further argues that 28 V.S.A. § 801(a) affords inmates a clear and certain right to medical treatment, by requiring that DOC provide inmates health care in accordance with prevailing standards. He reasons that Rule 75 jurisdiction and review is necessary to enforce this legislatively created duty. However, 28 V.S.A. § 801(a) certainly imposes no duty on DOC to provide any inmate with any particular medications, such as Adderall, in any specific dosage, frequency, or duration. The statute merely (and necessarily) requires DOC to administer health care to inmates through the exercise of professional expertise and judgment. "An officer who is entrusted with a duty which requires the exercise of his judgment and discretion is entitled to proceed therein without judicial interference and may render a decision that is final and conclusive." *Proctor*, 111 Vt. at 369.

Moreover, while 28 V.S.A. § 801(a) reflects our Legislature's deliberate policy choice, it is also a policy-laden decision by the Legislature whether, and on what terms or standards, executive branch discretionary decisions are subject to review and second-guessing by the judiciary. Indeed, "there is no absolute right to appellate review of administrative decisions," and "the legislature has the power, in the absence of any constitutional requirement, to deny such review." *Mason v. Thetford Sch. Bd.*, 142 Vt. 495, 498 (1983). Here, by legislative choice, DOC's health care decisions involving inmates are only subject to review in the nature of mandamus, and as previously discussed, that review is quite limited and narrow.

It is important to note that a dismissal of Mr. Taylor's case for lack of jurisdiction does not effectively render 28 V.S.A. § 801(a) a dead letter. The statute has a significant function and effect, even if jurisdiction is lacking under Rule 75. Inmates alleging that DOC's medical care was negligent, and proximately caused the inmate to suffer cognizable injuries, may bring medical malpractice claims in superior court under ordinary tort remedies. *See, e.g., Bittner v. Centurion of Vt., LLC*, 2021 VT 73, 215 Vt. 475; *Pontbriand v. Bascomb*, No. 2009-042, 2009 WL 2477608 (Vt. Jul. 20, 2009) (unpub. mem.). Title 28 V.S.A. § 801(a) plays an important role in that tort context, for at least two reasons.

First, the statute helps to effectuate a waiver of the State of Vermont's sovereign immunity, without which medical malpractice claims against DOC could not be brought at all. Title 28 V.S.A. § 801(a) creates a duty on DOC—to provide care in accord with prevailing medical standards—that is analogous to the duties of private institutions, with respect to the standard of care that such institutions owe to individuals within their custody. *See Herbert v. State*, 165 Vt. 557, 558 (1996) (mem.). The statute thus makes a prison inmate's medical negligence claim "comparable to" a cause of action against private institutions of care for purposes of 12 V.S.A. § 5601, the statute that waives of the State's sovereign immunity from tort claims. *Id.*

Second, the statute establishes the standard of care in the tort context and allows inmates to sue on a theory of ordinary negligence. By comparison, in other states inmates need to prove gross negligence when suing state prisons in tort for medical injuries. *See Coppage v. Mann*, 906 F. Supp. 1025, 1047-48 (E.D. Va. 1995) (Virginia law shields prison officials from ordinary

medical negligence claims but allows claims for gross negligence); *Jackson v. County of Saginaw*, 580 N.W.2d 870, 874 (Mich. 1998) (inmate must prove "gross negligence" by county jail doctor to sue in tort).[5]

The fundamental and controlling point here is that the mandate of 28 V.S.A. § 801(a) requires the exercise of discretion by an executive branch agency (DOC). Our Legislature has not made that mandate subject to judicial review by way of an appeal or petition for review filed in superior court. Without a statute providing for such judicial review, DOC's medical care decisions are still reviewable under Civil Rule 75, but only for mandamus, and mandamus does not permit review of such decisions unless they are tantamount to a refusal to act or a failure to exercise any discretion at all.

Conclusion

Accordingly, therefore, this action must be, and hereby is, DISMISSED for lack of subject matter jurisdiction.

So Ordered, at Rutland, Vermont, this 1st day of May, 2026.

Electronically Signed on: Friday, May 1, 2026 pursuant to V.R.E.F. 9(d).

_____
Susan A. McManus
Superior Court Judge

---

[5] To be clear, Mr. Taylor's Rule 75 action is fundamentally different than any medical malpractice lawsuit against DOC. Mr. Taylor seeks relief today only upon his attempts to show that DOC's treatment and care decisions were not in accordance with prevailing medical standards. He does not attempt to prove that he has suffered cognizable medical injuries, or that he has suffered such injuries as a proximate result of DOC's breach of the standard of care. He also filed no certificate of merit, which is a statutory requirement if he were suing in tort. *See Bittner*, 2021 VT 73, ¶¶ 1, 14 (inmate suing DOC for medical negligence must file certificate of merit, as required by 12 V.S.A. § 1042(a), unless exception applies).